## MONTANA UNION RAILWAY COMPANY, APPELLANT, *v.* LANGLOIS ET AL., RESPONDENTS.

RAILROADS—*Depot privileges—Public policy—Constitutional law.*—A railroad company may not grant to one person the exclusive right to the use of a portion of its depot platform to deliver passengers departing, and to receive and solicit the patronage of incoming passengers, to the exclusion of all other persons from the exercise of such rights, as such grant is against public policy and contrary to the provisions of article xv., section 7 of the Constitution, which provides that "no discrimination in charges, or facilities for transportation of freight or passengers of the same class, shall be made by any railroad, or transportation or express company, between persons or places within this State."

SAME—*Common carriers—Rights of passengers.*—Passengers arriving at or departing from the station of a common carrier are entitled to equal convenience and opportunity to approach said station or depart therefrom, and in so doing are entitled to whatever benefit of competition may grow out of the contests of others to supply the public demands and receive the compensation therefor.

SAME—*Common carriers—Exclusive privileges—Rules governing use of depot.*—A rule or regulation, as applied to the government of the conduct of persons, or of a class of persons, contemplates uniformity and not discrimination, and the grant by a railroad company of a platform privilege at its depot to one hackman to the exclusion of all others is therefore not such a rule or regulation as applied to the right of a common carrier to make and enforce all reasonable rules and regulations necessary to govern persons coming to its station buildings, platform, and grounds.

*Appeal from Second Judicial District, Silver Bow County.*

The cause was tried before DE WOLFE, J.

*M. L. Wines,* for Appellant.

The plaintiff contends that it is the owner in fee of its grounds and platforms; that it may regulate the use of the plat‑form as it desires, provided the traveling public are not inconvenienced; that it may, if it wishes, engage in carrying passengers by hacks to and from its trains; that if it was so engaged in such business, it would have the right to its own property for such purposes; that if it has such right, it can as well employ Lavells with twenty hacks to do such service, as to employ or buy the twenty hacks itself, and run them; that if plaintiff has the right to its platform, it has the right to sell that right to Lavells, especially for a valuable consideration, which valuable consideration redounds to the benefit of plaintiff's passengers, the public. The proposition simply is, may the railroad company sell this right for a valuable consideration, and be protected in such sale, and the benefits accruing to it thereby? The station grounds are the private property of the company. (Comp. Laws, § 692, p. 816; *Barker* v. *Midland Ry. Co.* 18 Com. B. 46; *Hall* v. *Power,* 12 Met. 482; *Harris* v. *Stevens,* 31 Vt. 79; *Gillis* v. *Pennsylvania R. R. Co.* 59 Pa. St. 129; *Illinois Central R. R. Co.* v. *Godfrey,* 71 Ill. 500.) The railroad company may make all reasonable regulations for the management of its grounds, the same as natural persons. (*Commonw.* v. *Power,* 7 Met. 596; *Hall* v. *Power,* 12 Met. 482; 1 American Railway Cases, 389; 36 Eng. L. & Eq. 253; 40 Eng. L. & Eq. 250.) Any one on the grounds of the railroad company, and not there for the purpose of coming or going on the train, though perhaps not a trespasser, may, after request, be ejected. (*Johnson* v. *C. R. I. & P. R. Co.* 51 Iowa, 25.) It is not unlawful, nor against public policy, for a railroad com‑pany to carry passengers by stage to and from one of its stations and an adjacent village, in connection with and as a part of its business of transporting passengers upon its road. (*Buffit* v. *Troy & Boston R. R. Co.* 36 Barb. 420.) Railroad company may carry on express business on its road to the exclusion of all others. (*Sargent* v. *Boston & Lowell R. R. Co.* 115 Mass. 416; *Vandall* v. *South San Francisco Dock Co.* 40 Cal. 83.) And, for a consideration, it may give this right to enter to one,

and exclude all others. (*Beadell* v. *Eastern Counties Ry. Co.* 2 Com. B. N. S. 509.) The railroad company may exclude hackmen and others, not there for the purpose of taking passage on the train. (*Johnson* v. *C. R. I. & P. R. Co.* 51 Iowa, 25; *Barker* v. *Midland Ry. Co.* 18 Com. B. 45; 36 Eng. L. & Eq. 253.) Hackmen have no right in the station grounds, and may be excluded. (*Landrigan* v. *State*, 31 Ark. 50; *Barker* v. *Midland Ry. Co.* 18 Com. B. 45; *McKone* v. *Michigan Cent. R. R. Co.* 51 Mich. 601; Patterson's Railway Accident Law, 219.) "No inconvenience to the public being shown, a railroad company will not be enjoined at the suit of a hackman to admit him;" and, of course, an injunction should be granted to the company to exclude such hackman. (*Beadell* v. *Eastern Counties Ry. Co.* 2 Com. B. N. S. 509; *Painter* v. *London B. & S. C. Ry. Co.* 2 Com. B. N. S. 72; *Barker* v. *Midland Ry. Co.* 18 Com. B. 45; *Marriott* v. *London & S. W. Ry. Co.* 1 Com. B. N. S. 499.) In the case last cited the hack driver was admitted to the yard, but the decision goes upon the ground of *public convenience*, and the decision rests expressly upon the inconvenience inflicted upon the public, not upon the particular grievance to the applicant, the driver. In *Painter* v. *London B. & S. C. Ry. Co.* 2 Com. B. N. S. 72, a railway company granted exclusive permission to a limited number of fly proprietors to ply for hire within their station. Injunction was refused against the company, at the instance of a fly proprietor excluded, although it was sworn to by plaintiff and others that occasional delay and inconvenience resulted to the public from the course pursued. Williams, J., says: "The complaint must come from those who use the railway and show a public inconvenience." In *Barker* v. *Midland Ry. Co.* 18 Com. B. 45, an omnibus proprietor, who carries passengers and their luggage for hire to and from a railway station, cannot maintain an action against the company for refusing to allow him to drive his vehicle into the station yard. An "undue preference" can only be established when they show that there is no such want of space as to warrant it, and this must be shown in connection with a *public inconvenience.* (*Marriott* v. *London & S. W. Ry. Co. supra.*) The above cases are directly in line with the position of the appellant. Respondent contends that we are creating a monopoly.

Such is not the situation.  We are making no "undue prefer-
ence."  The expression "undue preference" in the English stat-
ute, as well as in the general law of this country, has no reference
to extra privileges granted to certain ones of independent busi-
ness from the railroad company (as hack drivers, in this case),
but refers only to favors and preferences shown to those who
are actually dealing with them, and shown in relation to the
doing of what the corporation is expressly created to do.  The
railroad company is created to carry passengers and freight, and,
in the doing of this, it partakes of the nature of a public serv-
ant, but it is not created to foster and provide for those engaged
in the innumerable branches of business remotely connected
with the railroad, and owes to such persons no duty whatever.
The action must come from one of the public, seeking to use
the railway for some purpose for which it was created, and in
this case there is no pretense but that the Lavell hack service
was in every way adequate, and no complaint whatever appears
as coming from the public.  In short, a railroad company is not
created for the purpose of giving employment to hackmen, and
if they resort to the station and grounds for their own profit,
the company may exclude one, part, or all, and no unlawful or
undue preference will exist.

*John J. McHatton*, for Respondents.

The plaintiff contends that it is the owner of its grounds and
platforms, and may regulate the use of them.  This to a certain
extent is true; but the law will not permit undue or unreason-
able preference to be given, in the right to be admitted upon
such grounds, among those who conduct themselves in an
orderly manner, nor will exclusive privileges be allowed to
some in plying their business there which are denied to others.
Although such grounds and platforms may be private as to
ownership, they are not so as to the purposes to which they are
appropriated.  And while they are used mainly with a view to
the convenience of those who travel or transport their goods by
the road, still others, against whom no special objections exist,
should not be unreasonably or unequally excluded.  (Hutchin-
son on Carriers, p. 424, § 523; 1 Rorer on Railroads, p. 480,

par. 4.) The defendants contend that in common with all citizens of the commonwealth, whose business or avocation is necessarily connected with the business of the plaintiff company, they have the right, at all reasonable and proper times, to go upon the plaintiff's premises, when necessary to the transaction of their business, unless by so doing they in some way obstruct or interfere with said company in the discharge of its legitimate business. We think it cannot be contended that defendants annoyed plaintiff in any way, or that they interfered with its legitimate business. It only appears that they interfered with Lavell Brothers' business, and then only by taking a position with their hacks or carriages at plaintiff's platform when the space thereat was vacant, and not occupied by Lavell Brothers' carriages. This was no interference with plaintiff's business, and not even with Lavell Brothers' business, as defendants had a right thereto. (*Inhabitants of Worcester* v. *Western R. R. Corp.* 4 Met. 564; *Commonw.* v. *Power*, 7 Met. 596; *Camblos* v. *Railroad Co.* 9 Phila. 411.) That the alleged contract of plaintiff with Lavell Brothers is *ultra vires*, see *Summit* v. *State*, 9 Am. & Eng. Ry. Cas. 302; *Camblos* v. *Railroad Co.* 9 Phila. 411; and to permit such a disposal would be contrary to public policy. While the plaintiff has the right to make reasonable regulations regarding its platforms and grounds, they must be such as to apply to all alike, without preference or discrimination; and while it might exclude all hackmen from its grounds or platform, or require them to remain a certain distance therefrom, still, if it permits one to exercise the right or privilege of stopping at its platform it must permit all to do so. (*Markham* v. *Brown*, 8 N. H. 523.) Whatever may be the plaintiff's right to exclude all common carriers of passengers or merchandise from its depot and grounds, it cannot arbitrarily admit to its grounds and platform one common carrier and exclude all others. Such a regulation would not give to all persons the reasonable and equal terms and facilities secured to them by the common law. We submit that the following authorities are against the right of plaintiff to make such a regulation: *Parkinson* v. *Great Western Ry. Co.* Law R. 6 Com. P. 554; *In re Palmer etc. Ry. Co.* Law R. 6 Com. P. 194; *New England Exp. Co.* v. *Maine Cent. Ry. Co.* 57 Me. 188; *Marriott* v.

*London etc. Ry. Co.* 1 Com. B. N. S. 499. One point herein is, can the railroad control and conduct business foreign to the purpose of its organization, outside of its grant or franchise? We think not. If plaintiff is right in its claim, will it not really carry on and control the business of transporting passengers outside of its grounds and between Butte City and the same? We submit that it will. Finally, we contend that plaintiff's claim of right is clearly *ultra vires* and against public policy, and that to allow it to maintain it would not only create a monopoly and injure defendants, but would work a public inconvenience and injury.

HARWOOD, J.—This is an action for an injunction. The complaint sets forth that the appellant is a railway corporation organized under the laws of the Territory of Montana; that it is the owner of, and operating as a common carrier, a line of railroad running from Garrison, in Deer Lodge County, and divers other stations, to its station known as South Butte, in Silver Bow County, Montana, the latter station being about one and one-half miles from the United States postoffice in the city of Butte, in said Silver Bow County; that at the said station of South Butte the appellant is the owner of and in possession of a large number of railway tracks, yards, station grounds, and buildings; that the appellant has at said depot or station building at South Butte a long platform for the accommodation of passengers whom the appellant transports to and from said station, and that said depot grounds are surrounded by a board fence, inside of which hacks and wagons are accustomed to drive for the purpose of conveying passengers to appellant's passenger trains, and receiving passengers from said trains; that at the time stated, and for a long time prior thereto, the appellant had a contract with the government of the United States, whereby the appellant was obliged to carry upon its trains the United States mail matter to said station at South Butte, and thence to the postoffice at the city of Butte; that appellant contracted with Geoffrey and Thomas Lavell, in the name of Lavell Brothers, to carry said United States mail from said station at South Butte to the United States postoffice at Butte City, and appellant further contracted with said Lavell Brothers to have an ample supply of hacks and omnibuses

at said station of South Butte, at the arrival of all trains, for the safe and comfortable transportation of all passengers who desire such transportation from said station of South Butte to the city of Butte and points adjacent thereto. And in consideration thereof the appellant granted and agreed with said Lavell Brothers to give them the exclusive right to drive and stand their hacks, carriages, and omnibuses along the edge of the said platform. That respondents are the owners or drivers of hacks and carriages, and at the times complained of, and against the will and protest of plaintiff, have forcibly driven their hacks and carriages into said depot yard of plaintiff, and driven and stood such hack adjacent to and against the platform aforesaid, and have forcibly kept from such platform the hacks of Lavell Brothers; that plaintiff, by its agents and servants, have often protested to defendants against their conduct in that respect, and repeatedly told defendants that they could not occupy said platform privileges; but that plaintiff did offer defendants the privilege of driving into plaintiff's said depot at said station, and standing their hacks in said yard to deliver and receive passengers, provided the defendants would keep away from the said platform a distance of fifty feet, which place was clearly indicated to the defendants, and further that defendants might have the privilege of driving and standing their hacks and carriages at a point on said platform east of the passenger depot not occupied by the hacks of said Lavell Brothers; that notwithstanding these protests and concessions of plaintiff the defendants continue to drive and stand their hacks next to said platform, and within said fifty-feet limit; and defendants expressly decline to desist from driving and standing their hacks at said forbidden place, and expressly declare that they will persist in placing their hacks at the platform reserved as aforesaid to Lavell Brothers; that if the defendants continue to do these acts complained of, or any of them, the plaintiff will be prevented from carrying out its part of the said contract with Lavell Brothers, and the latter will decline to transport the said United States mail from the station aforesaid, and to the post-office at Butte City, and to care for plaintiff's railway passengers as aforesaid; that plaintiff has not a plain, speedy, and adequate remedy at law.

Upon the facts set forth, the plaintiff prays that the defendants be restrained by injunction from driving or standing hacks, cabs, carriages, or busses at the said platform of plaintiff at the west side of its depot buildings, or within fifty feet thereof.

The defendants answer and admit that defendant, Charles Langlois, is the owner of a line of hacks, vehicles, and carriages, with which he is engaged in carrying passengers in and about the city of Butte, and to and from the station and trains of plaintiff, and that the other defendants named are in his employ as drivers of said hacks, carriages, etc. But the defendants deny that they, or either of them, ever in any manner interfered with the said plaintiff in the conduct of its said railroad or passenger business at South Butte, or elsewhere, or that they, or either of them, interfered with the comfort or convenience of passengers of plaintiff at said station.

The defendants further allege that plaintiff never had any contract with any of its passengers to carry or transport them further than its said station at South Butte, and that plaintiff's contracts for transportation of its passengers to said station ends and is fully executed when such passengers are landed on said platform, and that all such passengers are obliged to procure and pay for their transportation from said platform to the city of Butte, or elsewhere. That the defendants, in their conduct in running their line of hacks and carriages for the transportation of passengers and baggage to and from the said station, have always conducted the same in a quiet and orderly manner, and have not gone upon the platform of plaintiff nor solicited nor annoyed plaintiff's passengers, but have driven their hacks and carriages up to said platform on the west side of said station and stood them there to receive and carry any and all such passengers as might wish to employ them so to do; that they never have at any time interfered, nor attempted to interfere, with the hacks of said Lavell Brothers at said station; that defendants have only driven their hacks up to said platform when there was a vacancy thereat, and had only refused to remove their hacks therefrom to make way for the hacks of said Lavell Brothers.

The defendants further allege that the portion of plaintiff's platform which is west of the said passenger station as described

in plaintiff's complaint is the portion of the platform where passengers alight from plaintiff's trains at said station; that the portion of the said platform east of said station building, which plaintiff alleges it offered to allow defendants to drive their hacks to for the purpose of landing and receiving passengers, is used almost entirely for handling freight and baggage, and the ground alongside thereof is always used by baggage and freight wagons; that if said Lavell Brothers are allowed the exclusive use of said platform west of said station house, it will give the said Lavell Brothers the entire control of the business of carrying passengers from the said station, to the discomfort, inconvenience, and detriment of said passengers, and to the injury and destruction of defendant's passenger-carrying business from said station; that defendants have not in any manner interfered with or hindered the plaintiff or Lavell Brothers in the handling or transportation of the United States mails over said railroad, or from said station to the postoffice in the city of Butte, or elsewhere; but have always allowed and conceded to the said plaintiff and to the said Lavell Brothers sufficient ground and space at and against said platform for the use of said Lavell Brothers' baggage wagon, omnibus, two carriages or hacks, and their wagons used in carrying United States mails, without any interference or hindrance from defendants, or either of them.

The defendants deny that if said acts of defendants complained of be allowed to continue the plaintiff will thereby suffer irreparable injury, or any injury whatever, or that if defendants continue said acts complained of, they will hinder, prevent, or delay the plaintiff in its business. And the defendants allege that it is not for the convenience of plaintiff's business that it has entered into said contract with said Lavell Brothers, as alleged in said complaint, but for the purpose of giving said Lavell Brothers an undue advantage over these defendants and other hackmen in the said passenger-carrying business from said station, and to exclude defendants and other hackmen from any competition in said business.

The foregoing facts are substantially the allegations of the complaint and answer respectively. No other pleadings were filed. Final hearing of the cause was had upon the facts set

forth in the complaint and answer, and determined in the court below, by an order setting aside the temporary injunction and denying the relief prayed for by plaintiff, from which order plaintiff appealed.

The whole question involved in this controversy is compassed by the proposition on the part of the plaintiff, "that it is the owner of said grounds, depot buildings, and platform, and that it may regulate the use of said platform as it desires, provided the traveling public is not inconvenienced; that it may, if it desires, engage in carrying passengers in hacks to and from its trains; that if it was so engaged, it would have the right to its own property for such purpose; that if it has such right, it can as well employ Lavell Brothers with hacks to do such service as to own the hacks; that if the plaintiff has the right to its platform, it has the right to sell that right to Lavells for a valuable consideration," and should be protected in the exercise and benefits of these rights.

These propositions are controverted by defendants, in so far as they affirm the right of the plaintiff to grant exclusive use of a portion of said platform to one party to approach and occupy the same to convey passengers thereto, and receive passengers therefrom, and exclude all others from so doing.

No complaint is made that any reasonable rule or regulation made by plaintiff for the government of its depot platform or grounds has been violated, or that defendants have committed any act which interferes with the transaction of plaintiff's business, except in so far as defendants interfere with the exclusive use of said portion of plaintiff's platform granted to Lavell Brothers.

In respect to the delivery of the United States mail matter at said platform, and transportation thereof to the United States postoffice in the city of Butte, it is admitted that ample space for that purpose is left to the use of the company and its employees, according to its requirements.

The question of handling the United States mail matter, it seems, is incidentally brought into this controversy, the transfer of this mail matter for the plaintiff being principally the consideration performed by Lavell Brothers for the grant of exclusive use of the designated portions of the railway platform to

them, at which place Lavell Brothers may ply for passengers to patronize their hacks and carriages. If the plaintiff has the right to grant the exclusive use of its platform in the respect mentioned, it may be granted for any other valid consideration as well. It is not denied that a railway company may make and enforce all reasonable rules and regulations necessary to govern persons coming to its station buildings, platform, and grounds. It is highly proper and beneficial to all concerned that this be done. The law recognizes this right on the part of the common carrier and the courts enforce it. Upon this point the learned counsel for appellant cites many authorities, with which this court agrees. But we conceive that the matter under consideration is a far different proposition. The grant of a special privilege to Lavell Brothers to use the specified portion of plaintiff's platform at said station, and the exclusion of all others from approaching thereto to land or receive passengers, is not a rule or regulation in the common acceptation of those terms as used in the legal authorities and applied to this subject.

We therefore find in the numerous and valuable authorities cited on that theory only general aid in solving this controversy.

A general rule or regulation, as applied to the government of the conduct of persons, or of a class of persons, contemplates uniformity and not discrimination in its requirements. This controversy must be solved by a consideration of the mutual rights of the appellant as a common carrier and its passengers.

All passengers in common are entitled to equal opportunities and conveniences of place to approach and depart from plaintiff's trains. At the station mentioned, the railway company either commences or terminates its engagement to transport its passengers to and from said station, as the case may be. The contract of the railway company does not require that it either furnish conveyance to bring the passenger to said platform, or transport him therefrom. The passenger may employ whom he desires to bring him there for the departure on plaintiff's trains, or to meet and receive him on his arrival at said station. But the plaintiff contends that it may grant the exclusive use of a large portion of its platform to one party, at which to land passengers for departure on said trains, or to receive passengers from said trains; and if the passenger is willing to contract

with this one party for transportation thereto or therefrom, such passenger may have the convenience of landing or departing from that portion of said platform, otherwise he must land fifty feet away from said platform, or go to another portion of the platform, encumbered with express and baggage wagons, and the handling of freight and baggage matter.

Suppose a passenger travels every day from this station and returns, he is entitled to the same convenience and facilities for approaching and leaving this depot as other passengers.

If he contracts with another than Lavell Brothers, or the party to whom the railway company has granted the exclusive use of said portion of the platform, to bring him there and be there to receive him on his return, he must alight from his carriage or be received by it fifty feet away from said platform, or be landed where the express and baggage matter is handled, while the passenger who employs Lavell Brothers for the same purpose may land at and depart from this convenient portion of said platform. Or if a party desired to use his own carriage to bring him to said station or receive him on his return, it seems the same conditions would prevail.

Certainly, if the plaintiff has the right to grant the exclusive use of said platform to one, and exclude the public hackmen therefrom, it would apparently have the right to exclude the private hackmen therefrom. To the strong it would perhaps make no difference as a matter of convenience just where they were landed at or received from said station; but to the feeble and the helpless, and those encumbered with their care, it would be a matter of great discomfiture and inconvenience.

Still other conditions which directly result from the position demanded by plaintiff, and which militate against the equal rights of passengers, may be suggested.

Suppose all other hackmen who desire to compete with Lavell Brothers for the carrying of passengers to and from this depot will perform the service for half the sum charged by Lavell Brothers, are the passengers entitled to the benefit of this competition?' Has not the passenger the right to call these other hackmen to his service, and if he does call them, has he not a right to have such other hackmen approach the platform at the same place, or at least have an equal and common chance to approach at this

same convenient place as his co-passenger who employs Lavell Brothers? If any of the passengers do accept these better terms, they must suffer the discrimination of being denied a landing at that portion of the platform granted exclusively to Lavell Brothers, or when they alight from plaintiff's trains they either go fifty feet away from that portion of said platform, or to the east side of the depot building, for transportation with a hackman at the lesser rate.

It is a rule of universal application that the public is entitled to whatever competition may grow out of the public demands, on the one hand, and the contest of others to supply such demands and receive the compensation therefor. Are not the conditions here sought to be so controlled by the plaintiff such as to stifle the natural development of such competition?

It is alleged by the plaintiff that by its arrangement with Lavell Brothers the latter engage to have a sufficient number of hacks and carriages at the arrival of all passenger trains to transport such passengers to the city of Butte from said station. But the plaintiff does not contract to carry its passengers destined to said station beyond that point, nor to see that such passengers are provided with transportation beyond that point. The plaintiff simply undertakes to reap a benefit from the necessity of its passengers, to procure on their own account, and from such party, and on such terms as they may, transportation to the city. This benefit is sought to be denied by the plaintiff, from a grant of the most favorable portion of the platform where plaintiff sees fit to land its passengers, exclusively to one party, to solicit their patronage, and for this grant such party aids plaintiff in carrying out its contract to deliver the United States mails at the postoffice in the city of Butte.

On principle, we cannot reconcile these conditions which are demanded by appellant with the rule that all who come to take passage, or who arrive at the station of a common carrier, are entitled to equal convenience and opportunity to approach said station, or depart therefrom. It seems to us that the direct effect of appellant's position is to say to its passengers, "You must employ Lavell Brothers, or suffer certain inconveniences in taking passage with another."

These observations are not to be confounded with the question

as to whether the railway company may not exclude all hackmen from its station buildings, or even from the platform, or set bounds on its grounds beyond which they should not come, as the exigencies of the situation and business might reasonably require, or to make and enforce any other reasonable rule as to the government of its depot buildings and grounds. It is not a general question of that character which here engages the consideration of the court.

The Constitution of this State, article xv., section 7, provides that "no discrimination, in charges or facilities for transportation of freight or passengers of the same class, shall be made by any railroad, or transportation or express company, between persons or places within the State."

The reported cases involving like or similar facts as the one at bar, which have come to our attention, are few in number. The recent case of *Old Colony R. R. Co.* v. *Tripp*, 147 Mass. 35, is the nearest in point. The facts involved in that case are quite similar to the case at bar, although it appears from the statement of facts and the opinion, that while exclusive grant was made by the railroad company to Porter and Sons to come upon the depot premises to solicit passengers and baggage for transportation, and all other hackmen were forbidden to come there for that purpose, still, all hackmen were allowed equal privileges to come to the station to deliver passengers and baggage, and to receive such as they had a previous order for.

While we concur in the general principles of law applicable to common carriers, announced by the majority of the nearly evenly divided court in that case, we cannot subscribe to the conclusions drawn by the majority. On the contrary, after a careful consideration of that case, we are inclined to adopt the reasoning and conclusion of the dissenting opinion delivered by the three minority judges. The majority opinion in that case very clearly and forcibly states the general principles of law governing common carriers, applicable to the present consideration. The court says: "The plaintiff is obliged to be a common carrier of passengers. It is its duty to furnish reasonable facilities and accommodations for the use of all persons who seek for transportation over its road. It provides its depot for the use of persons who were transported on its cars to or from

the station, and holds it for that use, and it has no right to exclude from it persons seeking access to it for the use for which it was intended, and is maintained. It can subject the use to rules and regulations, but by statute, if not by common law, the regulations must be such as secure reasonable and equal use of the premises to all having the right to use them."

We do not find it consonant with reason, based upon those general propositions, to draw the conclusion that the railroad company may bring its passengers to a common landing, where the necessity, comfort, or convenience of their situation compels them to obtain on their own account transportation to some place beyond, and there introduce them to one favored party, saying, "If you engage transportation from this party, you may do so here on the spot, without delay or inconvenience, and take passage from this platform, without delay or inconvenience, provided you will engage this particular party and pay his demands, otherwise you must suffer the importunity of this party to take passage with him, and if you will not, you must suffer the inconvenience and delay of going to some other point to engage conveyance and take passage."

All this the railroad does, not for a benefit to the passenger, but for a benefit to itself, over and above what the passenger has paid for transportation over the railroad.

If the railroad company set bounds, beyond which all hackmen were forbidden to come, and undertook to forbid all solicitation within the depot or on the platform on the part of hackmen or others for employment, this would be an entirely different proposition. The company does not undertake to protect the passenger from that annoyance in these cases, but invites it, and farms out the exclusive privilege and opportunity to do this.

In the case cited *supra*, the majority of the court bases its conclusion on the ground that the hackman has no right or license to be in plaintiff's depot without the express or tacit permission of plaintiff, and this license, if granted, may be revoked at pleasure. We may grant this premise. The right which the railroad has to exclude all hackmen from its depot buildings and platform may rest upon the same principle. But has the railroad company in dealing with its passengers, and exercising a control over their movements and the conditions

which surround them for the time being, a right to place one hackman in their midst with exclusive control over the common conveniences and facilities of the place at which the passenger may land, or from which he may depart, so that if the passenger obtains the use of these conveniences and facilities he must purchase the privilege from such hackman or suffer discrimination? The use of these common conveniences and facilities belong to the passengers alike in the order in which they may come to occupy them; whereas, the railroad company has granted away what belonged to the passengers in common, and the one holding the grant may use it as an advantage over the passenger to compel his employment.

It is said in the opinion cited *supra:* "If a railroad company allows a person to sell refreshments or newspapers in its depot, or to cultivate flowers on its station grounds, the statute does not extend the right to all persons." Upon this proposition it might be suggested that the passenger has no common interest or rights which meet and intermingle with the rights of the common carrier on this subject, or which are affected by such a grant. The same reply may be made, we think, with good reason to the proposition as to a place to serve refreshments on the premises of the plaintiff. The passenger has no common rights which are taken away or interfered with by the company in this respect. It is true the passenger's necessities may require that he have food at proper times on his journey. But all passengers have an equal right to provide supplies under regulations which apply to all alike as to the amount of baggage allowed to each. Moreover, this question has no relation to the mutual engagements existing between the common carrier and its passengers. The passenger has purchased, or proposes to purchase from the common carrier, transportation, and he must come to the station to receive such transportation, and on arriving at his destination he must depart from the station. The right to come to the station and depart therefrom under reasonable regulations, which apply alike to all passengers without special conditions, is incidental to the main contract, while the supply of refreshments, or newspapers, or the cultivation of flowers at the station grounds has, as we conceive, no appropriate connection with the engagements of the passenger and the common carrier.

The case cited *supra* is the only American case brought to our attention which passes upon points directly involved herein. The subject is apparently a new one in this country. The English cases involving the main subject of controversy are also few in number.

In the case of *Marriott* v. *London & Southwestern Ry. Co.* 1 Com. B. N. S. 499, the complainant Marriott alleged that he brought passengers to defendant's railway station, and the latter refused him access to the station grounds to deliver his passengers there, while at the same time this privilege was granted to other omnibuses, and upon this showing an injunction was granted. Other English cases bearing upon the main subject here under consideration have been examined. (*Beadell* v. *Eastern Counties Ry. Co.* 5 Com. B. N. S. 509; *Painter* v. *Lord Brighton & S. C. Ry. Co.* 5 Com. B. N. S. 70; *Barker* v. *Midland Ry. Co.* 18 Com. B. 46.) The demands in the case at bar, on the part of plaintiff, go beyond those urged in any of the cases so far examined by us.

Upon grounds of sound reason, public policy, and the general principles of law governing common carriers, as well as the provisions of our constitution, we believe the order of the court below ought to be affirmed, and it is so ordered.

BLAKE, C. J., concurs.

Associate Justice DE WITT, having been counsel for plaintiff in this action in the court below, did not sit in the consideration thereof in this court.