ELZEARD GODBOUT v. ST. PAUL UNION DEPOT COMPANY.

February 16, 1900.

Nos. 11,885—(205).

### Control of Railway Station by Owner.

In an action for damages brought by a hackman against the Union Depot Company for being prohibited from soliciting business within the building, *held*, that a common carrier has, by virtue of its right of ownership in its property, the control of its depots, subject only to the rights of the public having business relations with it.

### Regulations—Special Privileges.

Such common carrier may make such rules and regulations as it deems necessary for the control of its business within such building, and may grant special and exclusive privileges to hackmen to solicit business, provided such rules and regulations are reasonable, and conduce to the comfort, convenience, and interest of its patrons.

### G. S. 1894, § 380, subd. b.

G. S. 1894, § 380, subd. b, applies only to those persons or parties having contractual relations with a common carrier.

### Hackmen Soliciting Business.

A hackman or private carrier for hire is not a party having such relations with a common carrier as will permit him to enter a depot to solicit business from passengers.

### Same—Outside of Station.

Such hackmen and private carriers, in common with all others in that business, have the right and privilege of soliciting public patronage, without being discriminated against, at all points without the depot, when such points or places have been properly designated.

### Same—Right of Entry.

All hackmen and persons engaged in the business of conveying passengers and baggage for hire have the right of entry, without discrimination, to the depots of a common carrier, to deliver or receive passengers or baggage, in pursuance of a contract or order, subject to proper rules and regulations, for the interest of the traveling public.

### Exclusive Contract—Evidence.

The contract and evidence in the case examined, and found to provide

a reasonable and proper arrangement for the patrons of the defendant, in reference to the transfer of passengers and baggage.

Action in the district court for Ramsey county to recover $500 damages by reason of defendant's ejection of plaintiff from its depot building. The case was tried before Brill, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed.   Affirmed.

*Stevens, O'Brien, Cole & Albrecht*, for appellant.

Defendant is a quasi public corporation, holding under its charter rights and privileges granted to it upon that theory; this involves duties and responsibilities upon its part towards the public which it is obliged to discharge faithfully in obedience to the trust imposed on it.   State v. St. Paul U. D. Co., 42 Minn. 142; St. Paul U. D. Co. v. Minnesota & N. W. R. Co., 47 Minn. 154; Indianapolis v. Cooper, 6 Ind. App. 202; Fetter, Car. § 204.   Plaintiff is a common carrier, no less than defendant, with all the rights and obligations inherent in that capacity.   Hutchinson, Car. §§ 59–61; Fetter, Car. § 207.   Defendant is a common carrier, subject to all the duties and obligations of a railroad company.   Pennsylvania v. Ellett, 132 Ill. 654; Indianapolis v. Cooper, supra; Fetter, Car. § 204; Inhabitants v. Western, 4 Metc. (Mass.) 564.

Certain propositions of law may be admitted: 1. A common carrier has the right to establish and enforce reasonable rules and regulations governing the use of its station grounds, to facilitate the transaction of its business, to preserve order, and to protect those lawfully upon its premises.   Dowd v. Chicago (Wis.) 20 L. R. A. 527, notes.   2. When reasonably necessary, a common carrier may entirely exclude all hackmen, without discrimination, from soliciting patronage on its conveyances and station grounds by suitable and uniform regulations.   Lindsey v. Anniston, 104 Ala. 257; Landrigan v. State, 31 Ark. 50; Com. v. Power, 7 Metc. (Mass.) 596; Summitt v. State, 8 Lea, 413.   3. The carrier may prescribe and enforce reasonable regulations assigning particular positions to each hackman, such regulations applying to all indiscriminately.   Cole v. Rowen, 88 Mich. 219; Lucas v. Herbert, 148 Ind. 64.   4. A carrier may by rule prohibit hackmen from

obstructing the entrance to its station, although equitable relief will be afforded only in case of special damages. Smith v. New York, 149 Pa. St. 249; Pittsburgh v. Cheevers, 149 Ill. 430. 5. No one has the right to ply a strictly private business, not affected by a public interest, on conveyances or premises of the carrier, such as vending news, edibles, stationery, or flowers. Fluker v. Georgia, 81 Ga. 461; Cosgrove v. City Council, 103 Ga. 835. 6. A carrier may lawfully exclude from its cars or vessels while in transit, all transfer agents, not specially privileged to solicit patronage, even though such agents may be passengers, such conveyances in transit not being intended as places for the transaction of the passengers' business. Jencks v. Coleman, 2 Sumn. 221; Barney v. Oyster Bay, 67 N. Y. 301; Barney v. The D. R. Martin, 11 Blatchf. 234. 7. A hackman or transfer agent cannot lawfully be excluded from station grounds when he enters pursuant to a special engagement with a passenger. Griswold v. Webb, 16 R. I. 649.

It is a disputed question whether or not a carrier can grant exclusive privileges upon its conveyances to a single express company. Express Cases, 117 U. S. 1, accord; Sandford v. Railroad Co., 24 Pa. St. 378; New England v. Maine, 57 Me. 188, contra. The discrimination sought to be established violates both the express statutes and the legislative and judicial policy of this state. G. S. 1894, § 380, subd. b. Our statute differs materially from the act of Victoria construed in the English cases; and the circumscribed construction attempted to be placed upon it is not warranted. Myers v. Chicago, M. & St. P. Ry. Co., 50 Minn. 371; Farwell Farmers' Warehouse Assn. v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 55 Minn. 8. What the legislature could not do directly cannot lawfully be done by the by-laws or regulations of a corporation which it has created. Dunham v. Village of Rochester, 5 Cow. 462.

The American authorities conflict somewhat on the question whether or not the carrier may lawfully grant exclusive privileges to a single hackman to solicit patronage upon its station grounds. The authorities sanctioning such discrimination are: Old Colony v. Tripp, 147 Mass. 35, followed in Com. v. Carey, 147 Mass. 40, note; New York v. Flynn, 74 Hun, 124; New York v. Sheeley, 27 N.

Y. S. 185; Barry v. Rainey, 57 Id. 766; Brown v. New York, 75 Hun, 355; Alexandria v. New York, 18 App. Div. 527; New York v. Scoville, 71 Conn. 136. Authorities denying the right to dis-' criminate are: Indianapolis v. Dohn, 153 Ind. 10; Markham v. Brown, 8 N. H. 523; McConnell v. Pedigo, 92 Ky. 465; Montana v. Langlois, 9 Mont. 419; Kalamazoo v. Sootsma, 84 Mich. 194; Cravens v. Rodgers, 101 Mo. 247; State v. Reed, 76 Miss. 211; Indian v. East Coast, 28 Fla. 387; Camblòs v. Philadelphia, 9 Phila. 411. The weight of authority is against discrimination. 1 Fetter, Car. § 245; Indianapolis v. Dohn, supra.

Plaintiff had both a statutory and common-law right of entry upon defendant's station grounds in common with any or all others in the transfer business to whom such privilege is conceded, subject to reasonable and uniform regulation. Even if such right of entry does not exist as matter of law, no discrimination can be exercised against plaintiff. In support of a hackman's common-law right of entry, subject to regulation, upon the station grounds of a carrier, it is to be observed that plaintiff, as a hackman, is a common carrier with all the rights and obligations of such. Hutchinson, Car. §§ 59–61; 1 Fetter, Car. § 207. Defendant is exercising a public franchise conferred by the state, under which its property is dedicated to a public use, imposing the obligation to maintain its union depot as a legal duty. The use of the depot is not restricted to those merely who are seeking to avail themselves of the services of the carrier or who sustain contractual relations with him; but such right of public use extends, subject to reasonable regulation, to all whose specific errand or general occupation is of a quasi public character and is necessarily conducted in connection with the railroad business. Such right of entry, for instance, is possessed by those who have merely business or social engagements with passengers or come merely to meet or part with guests. Hutchinson, Car. (1st Ed.) §§ 522, 523; Dowd v. Chicago, supra; Ingals v. Adams Exp. Co., 44 Minn. 128; Munn v. Illinois, 94 U. S. 113.

The right of reasonable regulation may extend perhaps even to the entire exclusion of hackmen, as a class, if necessary to the proper discharge of the carriers' public duties. Lindsey v. Annis-

ton, supra; Landrigan v. State, supra. But all rules and regulations must apply impartially to all of the same class. The granting of an exclusive privilege is not a reasonable rule or regulation. Indianapolis v. Dohn, supra. A hackman is entitled to invoke passengers' rights in his own behalf. The weight of American authority is against the right to grant exclusive privileges. See cases cited supra.

*Hadley & Armstrong*, for respondent.

LEWIS, J.

Defendant is a corporation, under the laws of Minnesota, owning and operating transfer tracks in the city of St. Paul, and, in connection therewith, owning and maintaining a union passenger depot, and tracks for access thereto, which are used by defendant for the carriage of passengers into and out of the city, amounting to many thousands daily. On February 1, 1899, defendant entered into an agreement with J. B. Cook & Son, as follows:

"This agreement, made and entered into this first day of February, A. D. 1899, by and between the St. Paul Union Depot Company, party of the first part, and J. B. Cook & Son, party of the second part, witnesseth:

Whereas, said party of the first part deems it necessary, for the convenience of the public using its depot, that an opportunity be had in its depot building to engage for transfer of baggage and for engaging passage to various parts of the city in omnibuses and carriages; and whereas, it would greatly interfere with the prompt dispatch of business, as well as with the comfort and convenience of passengers using said depot, to be importuned by hackmen and transfer men generally while passing through or waiting in said station, and it is for the best interest of the people using said station that the privilege of soliciting such business should be confined to some one person or firm, over which said party of the first part can exercise control in the way said business shall be conducted:

Now, therefore, said party of the first part, in consideration of the covenants and agreements to be kept and performed by the party of the second part, does hereby grant to said party of the second part, during the continuance of this agreement, the exclusive privilege of soliciting and contracting with passengers for the transfer and delivery of baggage, for passage in omnibuses to various parts of the city, and for hiring of hacks, cabs, and carriages, within the Union Depot building, and train sheds attached,

at the city of St. Paul, and also permission to occupy and use the stand in the said depot building set apart for that purpose.

In consideration thereof, said parties of the second part covenant and agree as follows: (1) During the continuance of this agreement to, at all times during the day, and on the arrival of trains during the evening, keep an agent at said stand to attend to and accommodate the public in connection with such business. Such agents shall, while attending to such business, wear a cap similar to those usually worn by railroad employees, lettered in such a manner as to indicate his business to the public. (2) To have an agent meet all important trains arriving at said depot before they reach the city of St. Paul, and give the passengers on such trains an opportunity to arrange for passage in said omnibuses, for the hire of carriages, and the transfer or delivery of baggage, before arriving at said depot. (3) All employees of the parties of the second part shall transact their business in and about said station in a quiet and polite manner, and they shall in this regard be subject to the direction of the superintendent of the party of the first part, and said parties of the second part agree to dismiss from their service in or about said depot any agent, driver, or other employee, after receiving written notice of his objection to the employment of such man by the superintendent of the party of the first part. (4) To have present at said station, upon the arrival of all important trains, one or more omnibuses to take passengers to the various hotels in the central part of the city, and also to have within call at said station, on the arrival of all trains, a sufficient number of hacks, carriages, or cabs to accommodate the passengers using said depot on all ordinary occasions, and that such hacks, carriages, cabs, and omnibuses shall be kept in a clean, neat and serviceable condition, and provided with strong, gentle, and serviceable horses, and to employ drivers who are of temperate habits, polite, honest, and reliable, and capable of performing their duties in an efficient manner (5) The scale of charges demanded for services shall in all cases be reasonable, and not greater than those provided for by the ordinances of the city of St. Paul, and proof of any extortionate charging or unfair dealing by any driver or employee to or with any of the patrons of said depot shall be deemed sufficient grounds for the party of the first part to demand the dismissal of such driver or employee from the service of the parties of the second part (6) Said parties of the second part will hold and save the party of the first part harmless from any and all damages, costs, and expenses on account of any acts or omissions of any of the employees of said parties of the second part. (7) That the parties of the second part will protect and save and hold harmless the party of the first part from any and all expenses, costs, and damages on account of any action at law or suit of any kind that may be brought against it, by any

79 M.—13

person or persons, on account of granting the exclusive privilege hereinbefore mentioned to the parties of the second part. It is covenanted and agreed that this contract may be terminated by either party by giving to the other 30 days' written notice of its intention so to do.

In witness whereof, said party of the first part has caused these presents to be signed by its president, and the parties of the second part have hereunto set their hands, the day and year first above written.          Saint Paul Union Depot Company,
By W. A. Scott, President.
Jno. B. Cook & Son."

Cook & Son had, long prior to the time of operating under the agreement, owned and operated omnibuses and hacks, in the city of St. Paul, for the carriage of passengers for hire, and had agreements with the various railroad companies running trains into said city, authorizing them, and their agents, to enter such trains, and take up transfer coupons issued by the companies to passengers. For the purpose of attending to this business, Cook & Son placed their agents upon such trains, and maintained a stand in the Union Depot, with men in attendance to take up the checks and coupons issued to passengers on the trains. After the agreement was entered into, Cook & Son continued to enter the arriving trains for the same purpose, and continued to maintain such stand in the Union Depot, and kept therein from two to four agents to attend to the business of transfers, and to solicit transfer business to other depots and hotels from the passengers generally arriving and passing through. While Cook & Son were conducting such business pursuant to the agreement, defendant prohibited the plaintiff, and all other hackmen and persons engaged in carrying passengers and baggage in vehicles for hire, from soliciting patronage within the depot, and from exercising therein the privileges granted Cook & Son under their contract. During the time mentioned, there were a large number of persons operating vehicles for the carriage of persons and baggage for hire to and from the Union Depot. The entrance to, and exit from, the depot is about 24 feet from the street line of Sibley street, a public street of St. Paul, and along this street, opposite the depot entrance, in a space allotted by the city authorities, all vehicles landed and received their passengers.

On February 9, 1899, plaintiff was the owner of a hack, and used the same in said city to convey passengers for hire to and from different places in said city, and to and from said depot and other points in said city. On that day plaintiff placed his hack in the allotted space, and leaving the same in the charge of a driver, and with knowledge of the regulations and arrangements between defendant and Cook & Son, entered the Union Depot, and, without disturbance, did solicit persons arriving on trains in said depot to become passengers in his hack. Defendant thereupon requested plaintiff to cease such soliciting, and, upon refusal to cease, ejected him from the building. Plaintiff brought this action to recover damages. The cause was tried by the court without a jury. The court found substantially the facts as above stated, and ordered judgment for defendant. From an order denying a new trial, plaintiff appealed.

The view we take of the case makes it unnecessary to consider whether Ordinance No. 376 was valid and binding upon plaintiff. We assume that he was a duly-licensed hackman.

Appellant bases his right to recover upon the following propositions: (1) That the defendant is a quasi public corporation, holding, under its charter, rights and privileges which involve duties and responsibilities upon its part towards the public; (2) that the plaintiff, as a hackman, is a common carrier, with all the rights and obligations as such; (3) that plaintiff has both a statutory and common-law right of entry to defendant's depot, in common with any or all others in the transfer business to whom such privilege is conceded, subject to reasonable and uniform regulations; (4) that, even if such right of entry does not exist as a matter of law, no discrimination can be exercised against plaintiff.

To put it differently, plaintiff, as a common carrier, has both the statutory and common-law right of entry to the Union Depot, in common with other common carriers accorded the privilege; but, if no common carrier has the legal right of entry, defendant cannot discriminate, by admitting one to special privileges and excluding others.

Of the several cases relied on by appellant, the following are the leading ones, and are the most favorable to his contention: Mon-

tana v. Langlois, 9 Mont. 419, 24 Pac. 209, held that a railroad company could not grant to one person the exclusive right to use a portion of its depot platform to deliver and receive passengers and to solicit patronage; such grant being against public policy, and contrary to a constitutional provision that

"No discrimination in charges or facilities for transportation of freight or passengers of the same class shall be made by any railroad or transportation or express company, between persons or places within this state."

The decision is based squarely upon the mutual relations of the common carrier and its passengers; that all passengers, in common, are entitled to equal opportunities and conveniences of place to approach and depart from the trains; that the contract of carriage between the carrier and its passengers commences or terminates at the station, and passengers must have the right of competition among hackmen, and freedom of choice in selecting their method of transfer beyond the station. This case is followed in Kalamazoo v. Sootsma, 84 Mich. 194, 47 N. W. 667, where a like contract was under consideration. While the opinion is expressed that such exclusive contracts, as to depot approaches, tend to establish monopolies, not granted by the charter of the carrier, nevertheless the same principle is invoked as was applied in Montana v. Langlois, supra. Cravens v. Rodgers, 101 Mo. 247, 14 S. W. 106, is a similar case, and the decision is placed upon the same grounds, —that free competition tends to establish a reasonable price, and affords the safest, best, and most comfortable means of conveyance, a rapid passage, and polite and agreeable service to the traveling public. In McConnell v. Pedigo, 92 Ky. 465, 18 S. W. 15, although no statute was in effect, the court held, upon grounds of public policy, that an exclusive contract with one hackman for platform privileges was in contravention of the rights and privileges of passengers. To the same effect, see Indianapolis v. Dohn, 153 Ind. 10, 53 N. E. 937.

There is another line of cases which adopt a different rule, and which are relied on by respondent. The leading case is Old Colony v. Tripp, 147 Mass. 35, 17 N. E. 89. The railroad company entered into an exclusive contract with one to furnish the means to carry

passengers and their baggage from its station. All others were prohibited from entering the company grounds to solicit business, although they might enter to deliver or receive passengers upon order. The following statute was construed:

"Every railroad corporation shall give to all persons or companies reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents and servants and of any merchandise and other property upon its railroad, and for the use of its depot and other buildings and grounds; and, at any point where its railroad connects with another railroad, reasonable and equal terms and facilities of interchange." Pub. St. 1882 (Mass.) c. 112, § 188.

The majority of the court held that the use of its depots and grounds obviously meant a use of right; that the statute did not intend to prescribe who shall have the use of the grounds, but to provide that all who have the right to use them shall be furnished by the company with equal conveniences; that the statute applied only to relations between railroads as common carriers and their patrons; that the defendant, in his business as solicitor of the patronage of passengers, held no relations with the plaintiff as a common carrier, and had no right to its station grounds and buildings. Three judges dissented, and placed their opinion upon the ground that the rule established by the majority would enable a railroad company largely to control the transportation of passengers and merchandise beyond its own lines, and to establish a monopoly not granted by its charter, which might be for its own benefit, and not for the benefit of the public; that such a regulation did not give to all persons or companies reasonable and equal terms and facilities, as required by the statute. This dissenting opinion is referred to and approved in Montana v. Langlois, supra. The doctrine laid down in Old Colony v. Tripp is followed in Brown v. New York, 75 Hun, 355, 27 N. Y. Sup. 73; also in Griswold v. Webb, 16 R. I. 649, 19 Atl. 143, the reasoning is adopted, but distinguished, and it is held that the carrier could not deprive a passenger of the privilege of being carried from the terminus by other means than as provided by it. In New York v. Flynn, 74 Hun, 124, 26 N. Y. Sup. 859, the Massachusetts rule is followed, the facts being similar.

In an English case (Beadell v. Eastern, 2 C. B. [N. S.] 509) the company had sold for £600 the exclusive right to ply for hire within their station. The court held that no inconvenience to the public had been shown, and that it was important to the interests of the public that the vehicles which ply for hire in the station yard should be kept upon their good behavior, by being under the control of the company. To the same effect, see Barker v. Midland, 18 C. B. 46. These English cases were discussed and treated as authority in several of the American cases supra.

It is well settled that a common carrier may grant the exclusive privilege of soliciting the patronage of passengers on its boats and trains; also to sell books and refreshments on its trains, grounds, and depots. Fluker v. Georgia, 81 Ga. 461, 8 S. E. 529; Barney v. Oyster Bay, 67 N. Y. 301; Jencks v. Coleman, 2 Sumn. 221, Fed. Cas. No. 7,258; Barney v. The D. R. Martin, 11 Blatchf. 234, Fed. Cas. No. 1,030. We have met with no case to the contrary. Conceding to appellant the most favorable interpretation of the cases bearing upon this subject, we find that the courts have gone no further than to prevent discrimination in granting privileges at the point where the contractual relations between the company and the passengers cease; that is, at the station yard or platform where passengers enter and leave the premises. No case has been brought to our attention where an attempt has been made to apply the rule within a depot, where the general business is transacted between a common carrier and its patrons.

No complaint is made in the case before us that any discrimination was practiced against appellant outside the depot. He seeks, however, to extend the doctrine of no discrimination in soliciting patronage to the very heart of the building, where thousands of people are passing through daily, pursuant to their business relations as passengers with defendant. Whether arising upon considerations of public policy, or having its foundation in a statute, the principle which applies to prevent discrimination is that the rights of the public must be subserved. The passenger is entitled to have the benefit of open competition among carriage men at the place of departure from the depot. Any interference beyond this point by the company would be unwarranted, and an exercise of

power not granted by its charter. This is the principle recognized and adopted in most of the cases relied upon by appellant, and, so far as those cases are based upon that principle, we consider them authority. But within the Union Depot the condition is different. Here are located offices and rooms for the accommodation and convenience of the masses of persons departing, arriving, and waiting for trains. It is a public building only in a qualified sense. Its use is confined to the care and accommodation of those having business with the roads. The defendant was compelled to construct it to properly care for the business it had to do under its charter. The traveling public have rights and demands in their relations with the defendant which the building was designed to meet. The company cannot discriminate between different persons dealing with it as a common carrier. For the benefit of all such patrons, it may make necessary rules and regulations. The same rule that permits common carriers to control the sale of articles upon their trains by restricting the number; the same rule that permits it to grant special privileges to expressmen and transfer agents upon its trains,—applies to a depot where practically the same relations exist between the company and its patrons.

The statute cited by appellant (G. S. 1894, § 380, subd. b), is a part of the warehouse and commission laws, and has reference only to parties having contractual relations with common carriers. Appellant is not a common carrier. He has no established route, place of business, or time of employment. He is a carrier in a restricted sense, but had no contractual relations with defendant on the day he was evicted from the building. But, even if the statute were general and applicable, the conclusion would be the same.

Neither does it make any difference whether appellant is a common or a private carrier; the rule applies to the same extent. As a private carrier, he may, without being discriminated against, solicit business outside the building. As a private carrier, he has the right of entry to deliver or receive passengers; for then he would have contractual relations with the company through the passenger. The contract with Cook & Son recites that defendant deemed it necessary, and for the convenience of the public, to have

an opportunity to secure transfer privileges within the depot. Cook & Son are under obligations to have an agent meet the trains, and arrange for transfers of passengers on the trains and in the depot, to preserve order, and to have on hand proper vehicles, and to make reasonable charges. If this arrangement is a reasonable and proper one for such passengers and patrons, and conserves their interests, and does not tend to deprive them of proper opportunity to control their action after leaving the depot, then there is no ground for complaint. There is no evidence in the case tending to show that the arrangement provided by the contract is unreasonable, or that it in any respect interferes with the rights of the traveling public. On the other hand, the court below found, as a fact, that the contract conduced to the convenience and comfort of the public, and to the orderly performance of its business by defendant. If appellant were admitted to the building to solicit business, then all hackmen would have to be admitted. The presence of soliciting agents, without restrictions, would interfere, with the comfort, welfare, and convenience of the public. It would not change the principle involved if, as appellant contends, all the hackmen in the city could be admitted in rotation daily or weekly, and thereby order and public convenience be conserved.

We therefore conclude as follows: That neither a hackman nor a common carrier has either a statutory or common-law right to enter the Union Depot to solicit business; that both may enter the depot for the purpose of delivering or receiving passengers upon order or contract; that all carriers, private and public, have a common right, without discrimination, to solicit patronage at such points as may be properly designated beyond the depot; that within such building defendant is compelled to make such proper rules and regulations as will conserve the interest and convenience of the traveling public; that within such building defendant has control of its property and business, by virtue of its right of ownership, subject only to the rights of the public transacting business with it; and, as an incident to such obligations to the public and right of ownership, defendant may grant special privileges for the transfer of passengers and baggage.

Order affirmed.