OLD COLONY RAILROAD COMPANY vs. GEORGE D. TRIPP.

Plymouth.    October 18, 1887. — May 5, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Railroad — Passenger — Baggage — Expressman — Hackman — Station
Grounds — Exclusive Privilege.*

A railroad corporation may contract with one to furnish the means to carry in-
coming passengers or their baggage and merchandise from its stations, and may
grant to him the exclusive right there to solicit the patronage of such passen-
gers; and such an agreement is not within the Pub. Sts. c. 112, § 188, which
provides that such a corporation "shall give to all persons or companies rea-
sonable and equal terms, facilities, and accommodations . . . for the use of its
depot and other buildings and grounds." MORTON, C. J., FIELD & DEVENS, JJ.,
dissenting.

TORT for obstructing the station grounds of the plaintiff at
Brockton.    At the trial in the Superior Court, before *Thompson*,
J., evidence was introduced tending to prove the following facts.

The plaintiff is a railroad corporation, with all the powers and
subject to all the duties of such corporations in this Common-
wealth, and Brockton is one of the largest stations upon its road.
It had been the practice of the defendant and other owners of
job wagons, for several years prior to August 1, 1886, to go to
the Brockton station to wait for trains, and to ascertain if the
passengers had any baggage or other merchandise for them to
carry.    The plaintiff, on or about August, 1886, made a contract
with the firm of Porter and Sons, of Brockton, to provide means
for carrying all baggage and merchandise ·brought by incoming
passengers to such places in the city as they might desire, at
their expense.    Afterwards, the plaintiff, through its station-
master at Brockton, and by the order of its general manager
and also of its division superintendent, but not by any by-law or
vote of its directors or stockholders, notified the defendant and
all other owners of job wagons not to come upon the plaintiff's
grounds at Brockton to solicit baggage or merchandise from
incoming passengers, and informed them of the contract made
with Porter and Sons, but allowed them, however, to come to
the station to deliver such baggage and merchandise, and to take

away such as they might have previous orders for. The defendant after receiving this notice continued to come upon the premises, and to solicit baggage and merchandise upon the platform of the station from passengers upon the arrival of trains, and refused to depart therefrom when requested by the plaintiff's agents, though not there to deliver baggage or merchandise for outgoing passengers, or to take it away upon orders received elsewhere.

Upon these facts, the judge ordered a verdict for the plaintiff, and reported the case for the determination of this court. If the verdict was correct, judgment was to be rendered thereon; otherwise, judgment was to be entered for the defendant.

The case was argued at the bar in October, 1887, and afterwards was submitted on the briefs to all the judges.

*J. M. Day & H. Kingman*, for the defendant.

*J. H. Benton, Jr. & C. W. Sumner*, for the plaintiff.

W. ALLEN, J. Whatever implied license the defendant may have had to enter the plaintiff's close had been revoked by the regulations made by the plaintiff for the management of its business and the use of its property in its business. The defendant entered under a claim of right, and can justify his entry only by showing a right superior to that of the plaintiff. The plaintiff has all the rights of an owner in possession, except such as are inconsistent with the public use for which it holds its franchise; that is, with its duties as a common carrier of persons and merchandise. As concerns the case at bar, the plaintiff is obliged to be a common carrier of passengers. It is its duty to furnish reasonable facilities and accommodations for the use of all persons who seek for transportation over its road. It provided its depot for the use of persons who were transported on its cars to or from the station, and holds it for that use, and it has no right to exclude from it persons seeking access to it for the use for which it was intended and is maintained. It can subject the use to rules and regulations, but by statute, if not by common law, the regulations must be such as to secure reasonable and equal use of the premises to all having such right to use them. See Pub. Sts. c. 112, § 188. *Fitchburg Railroad* v. *Gage*, 12 Gray, 393. *Spofford* v. *Boston & Maine Railroad*, 128 Mass. 326. The station was a passenger station. Passengers

taking and leaving the cars at the station, and persons setting down passengers or delivering merchandise or baggage for transportation from the station, or taking up passengers or receiving merchandise that had been transported to the station, had a right to use the station buildings and grounds, superior to the right of the plaintiff to exclusive occupancy.    All such persons had business with the plaintiff, which it was bound to attend to in the place and manner which it had provided for all who had like business with it.

The defendant was allowed to use the depot for any business that he had with the plaintiff.    But he had no business to transact with the plaintiff.    He had no merchandise or baggage to deliver to the plaintiff, or to receive from it.    His purpose was to use the depot as a place for soliciting contracts with incoming passengers for the transportation of their baggage.    The railroad company may be under obligation to the passenger to see that he has reasonable facilities for procuring transportation for himself and his baggage from the station where his transit ends. What conveniences shall be furnished to passengers within the station for that purpose, is a matter wholly between them and the company.    The defendant is a stranger both to the plaintiff and to its passengers, and can claim no rights against the plaintiff to the use of its station, either in his own right· or in the right of passengers.    The fact that he is willing to assume relations with any passenger which will give him relations with the plaintiff involving the right to use the depot, does not establish such relations or such right; and the right of passengers to be solicited by drivers of hacks and job wagons is not such as to give to all such drivers a right to occupy the platforms and depots of railroads.    If such right exists, it exists, under the statute, equally for all, and railroad companies are obliged to admit to their depots, not only persons having business there to deliver or receive passengers or merchandise, but all persons seeking such business, and to furnish reasonable and equal facilities and conveniences for all such.

The only case we have seen which seems to lend any countenance to the position that a railroad company has no right to exclude persons from occupying its depots for the purpose of soliciting the patronage of passengers, is *Markham* v. *Brown*, 8

N. H. 523, in which it was held that an innholder had no right to exclude from his inn a stage-driver who entered it to solicit guests to patronize his stage, in opposition to a driver of a rival line, who had been admitted for a like purpose. It was said to rest upon the right of the passengers, rather than that of the driver. However it may be with a guest at an inn, we do not think that passengers in a railroad depot have such possession of or right in the premises as will give to carriers of baggage, soliciting their patronage, an implied license to enter, irrevocable by the railroad company. *Barney* v. *Oyster Bay & Huntington Steamboat Co.* 67 N. Y. 301, and *Jencks* v. *Coleman,* 2 Sumner, 221, are cases directly in point. See also *Commonwealth* v. *Power,* 7 Met. 596, and *Harris* v. *Stevens,* 31 Vt. 79.

It is argued that the statute gave to the defendant the same right to enter upon and use the buildings and platforms of the plaintiff, which the plaintiff gave to Porter and Sons. The plaintiff made a contract with Porter and Sons to do all the service required by incoming passengers in receiving from the plaintiff and delivering in the town baggage and merchandise brought by them, and prohibited the defendant and all other owners of job wagons from entering the station for the purpose of soliciting from passengers the carriage of their baggage and merchandise, but allowed them to enter for the purpose of delivering baggage or merchandise, or of receiving any for which they had orders. Section 188 of the Pub. Sts. c. 112, is in these words : " Every railroad corporation shall give to all persons or companies reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents and servants, and of any merchandise and other property upon its railroad, and for the use of its depot and other buildings and grounds ; and, at any point where its railroad connects with another railroad, reasonable and equal terms and facilities of interchange." A penalty is prescribed in § 191 for violations of the statute.

The statute, in providing that a railroad corporation shall give to all persons equal facilities for the use of its depots, obviously means a use of right. It does not intend to prescribe who shall have the use of the depot, but to provide that all who have the right to use it shall be furnished by the railroad

company with equal conveniences.   The statute applies only to relations between railroads as common carriers and their patrons. It does not enact that a license given by a railroad company to a stranger shall be a license to all the world.   If a railroad company allows a person to sell refreshments or newspapers in its depots, or to cultivate flowers on its station grounds, the statute does not extend the same right to all persons.   If a railroad company, for the convenience of its passengers, allows a baggage expressman to travel in its cars to solicit the carriage of the baggage of passengers, or to keep a stand in its depots for receiving orders from passengers, the statute does not require it to furnish equal facilities and conveniences to all persons.   The fact that the defendant, as the owner of a job wagon, is a common carrier, gives him no special right under the statute; it only shows that it is possible for him to perform for passengers the service which he wishes to solicit of them.

The English railway and canal traffic act, 17 & 18 Vict. c. 31, requires every railway and canal company to afford all reasonable facilities for traffic, and provides that "no such company shall make or give any undue or unreasonable preference or advantage to or in favor of any particular person or company, or any particular description of traffic, in any respect whatsoever." *Marriott* v. *London & South Western Railway*, 1 C. B. (N. S.) 499, was under this statute.   The complaint was that the omnibus of Marriott in which he brought passengers to the railroad was excluded by the railway company from its station grounds, when other omnibuses which brought passengers were admitted.   An injunction was ordered.   *Beadell* v. *Eastern Counties Railway*, 2 C. B. (N. S.) 509, was a complaint under the statute, that the railway company refused to allow the complainant to ply for passengers at its station, it having granted the exclusive right of taking up passengers within the station to one Clark.   The respondent allowed the complainant's cabs to enter the station for the purpose of putting down passengers, and then required him to leave the yard.   An injunction was refused.   One ground on which the case was distinguished from Marriott's was, that the complainant was allowed to enter the yard to set down passengers, and was only prohibited from remaining to ply for passengers.   See also *Painter* v. *London, Brighton, & South Coast*

*Railway,* 2 C. B. (N. S.) 702; *Barker* v. *Midland Railway,* 18 C. B. 46. Besides Marriott's case, *ubi supra, Palmer* v. *London, Brighton, & South Coast Railway,* L. R. 6 C. P. 194, and *Parkinson* v. *Great Western Railway,* L. R. 6 C. P. 554, are cases in which injunctions were granted under the statute ; in the former case, for refusing to admit vans containing goods to the station yard for delivery to the railway company for transportation by it ; in the latter case for refusing to deliver at the station, to a carrier authorized to receive them, goods which had been transported on the railroad.

We have not been referred to any decision or dictum in England or in this country, that a common carrier of passengers and their baggage to and from a railroad station has any right, without the consent of the railroad company, to use the grounds, buildings, and platforms of the station for the purpose of soliciting the patronage of passengers, or that a regulation of the company which allows such use by particular persons, and denies it to others, violates any right of the latter. Cases at common law or under statutes to determine whether railroad companies in particular instances gave equal terms and facilities to different parties to whom they furnished transportation, and with whom they dealt as common carriers, have no bearing on the case at bar. The defendant in his business of solicitor of the patronage of passengers held no relations with the plaintiff as a common carrier, and had no right to use its station grounds and buildings. A majority of the court are of the opinion that there should be

*Judgment on the verdict.**

---

* A similar decision was made the same day, in Suffolk, in the case of

COMMONWEALTH *vs.* JOHN CAREY.

COMPLAINT under the Pub. Sts. c. 112, § 196, to the Municipal Court of the city of Boston, alleging that the defendant did, on December 8, 1887, without right, loiter and remain within the passenger station-house of the New York and New England Railroad Company in Boston. At the trial in the Superior Court, on appeal, before *Sherman,* J., it appeared in evidence that the defendant was a licensed hackman in the city of Boston; that on the day alleged he visited the premises in question about nine o'clock in the evening ; that he drove into the enclosure owned by the company, permitted his hack to remain near the platform within the enclosure, and remained himself upon the platform and inside the station-house; that a railroad police officer in the station-house, who had been instructed not to permit any

FIELD, J.   The Chief Justice, Mr. Justice Devens, and myself think that our statutes should receive a different construction from that given to them by a majority of the court.   The Pub. Sts. c. 112, § 188, provide that " every railroad corporation shall give to all persons or companies reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents and servants, and of any merchandise and other property upon its railroad, and for the use of its depot and other buildings and grounds; and, at any point where its railroad connects with another railroad, reasonable and equal terms and facilities of interchange."   Section 189 of the same chapter provides that " every railroad corporation shall promptly forward merchandise consigned or directed to be sent over another road connecting with its road, according to the directions contained thereon or accompanying the same, and shall not receive and forward over its road merchandise consigned, ordered, or expressly directed to be received and forwarded by a different route."   By § 191, a railroad corporation which violates these provisions is liable for all damages sustained by reason of such violation, and to a penalty of two hundred dollars, which may be recovered to the use of the party aggrieved, or to the use of the Commonwealth.   These sections are taken from the St. of 1874, c. 372, §§ 138, 139, 141, and the St. of 1880, c. 258.

Section 188 of the Pub. Sts. c. 112, was first enacted by the

hack to enter the enclosure, except such as were owned by or in the service of the Boston Cab Company, requested the defendant, who was not in such service, to leave the premises of the company ; and that the defendant refused and failed so to .do, but remained upon the premises and inside the station for some minutes after being so requested to leave.

The judge instructed the jury that the defendant, upon the above facts, was upon the premises of the company without right, after he received the request to leave; and that if he remained and loitered thereafter, they would be authorized to return a verdict of guilty; and the defendant alleged exceptions.

The case was submitted on briefs, on April 6, 1888, to all the judges.

*J. P. Leahy*, for the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

W. ALLEN, J.   The only exception taken was to the instruction that the defendant had no right to remain on the premises of the railroad company after being requested to leave.   The recent case of *Old Colony Railroad* v. *Tripp, supra*, is decisive of the question.        *Exceptions overruled.*

St. of 1867, c. 339. This section does not, in terms, require that the persons or companies to whom the corporation is required to give "reasonable and equal terms, facilities, and accommodations" shall own the merchandise which is transported, nor is it limited to the delivery of merchandise to be transported by the railroad corporation. In the clause relating to connecting railroads, the section plainly means that railroads shall give to other railroads connecting with them, and shall receive from such other railroads, reasonable and equal terms and facilities of interchange, both in delivering passengers and merchandise to, and in receiving them from, the railroads with which they connect. The provision that every railroad corporation shall give to all persons or companies reasonable and equal terms, facilities, and accommodations for the use of the depot and other buildings and grounds, must include the use of the depot and other buildings and grounds for receiving passengers and merchandise from a railroad at the terminus where the transportation on the railroad ends, as well as for delivering passengers and merchandise to a railroad at the terminus where such transportation begins.

As the last clause of the section makes provision for carriers connecting by railroad, we think that the preceding clause was intended to make provision for other connecting carriers, and to include public or common carriers, as well as private carriers actually employed by passengers or by the owners or consignees of merchandise. Stages and expresses are the only common carriers of passengers and of merchandise to and from many places in the Commonwealth, and in connection with railroads often form a continuous line of transportation. The statute, we think, was intended to prevent unjust discrimination by a railroad corporation between common carriers connecting with it in any manner, and to require that the railroad corporation should furnish to such carriers reasonable and equal terms, facilities, and accommodations in the use of its depot and other buildings and grounds for the interchange of traffic.

A railroad corporation can make reasonable rules and regulations concerning the use of its depot and other buildings and grounds, and can exclude all persons therefrom who have no business with the railroad, and it can probably prohibit all

persons from soliciting business for themselves on its premises. Whatever may be its right to exclude all common carriers of passengers or of merchandise from its depots and grounds who have not an order to enter, given by persons who are or who intend to become passengers, or who own or are entitled to the possession of merchandise which has been or is to be transported, it cannot arbitrarily admit to its depot and grounds one common carrier and exclude all others. The effect of such a regulation would be to enable a railroad corporation largely to control the transportation of passengers and merchandise beyond its own line, and to establish a monopoly not granted by its charter, which might be solely for its own benefit, and not for the benefit of the public. Such a regulation does not give "to all persons or companies reasonable and equal terms, facilities, and accommodations . . . for the use of its depot and other buildings and grounds," in the transportation of persons and property. See *Parkinson* v. *Great Western Railway*, L. R. 6 C. P. 554; *Palmer* v. *London, Brighton, & South Coast Railway*, L. R. 6 C. P. 194; *New England Express Co.* v. *Maine Central Railroad*, 57 Maine, 188.

*Marriott* v. *London & South Western Railway*, 1 C. B. (N. S.) 499, was an application for an injunction under the St. of 17 & 18 Vict. c. 31, § 2, and an injunction was issued compelling the company to admit the complainant's omnibuses into its yard "at all reasonable times, for the purpose of forwarding, receiving, and delivering traffic upon and from their said railway, and in the same manner and to the same extent as other public vehicles of a similar description are admitted into the said yard for that purpose." In that case the company had made arrangements with one Williams, to provide sufficient accommodations by means of omnibuses for passengers over a part of the route on which the complainant's omnibuses ran, but it appeared that there were passengers from Twickenham and Hampton Wick whose sole reliance was upon the complainant's omnibuses. Williams's omnibuses were admitted within the yard to set down and to receive passengers, but the complainant's omnibuses were not permitted to enter the yard for either purpose. The court held, that, as it did not appear that there was any public benefit which justified the course pursued by the company, the arrange-

ment with Williams was an "undue and unreasonable prefer- ence and advantage" in his favor, within the meaning of the statute.

*Beadell* v. *Eastern Counties Railway*, 2 C. B. (N. S.) 509, and *Painter* v. *London, Brighton, & South Coast Railway*, 2 C. B. (N. S.) 702, were both applications under the same statute. In one of these cases the railway company had agreed with a cab proprietor, in consideration of £600, to allow him the exclusive liberty of plying for hire within its station; and in the other, similar exclusive privileges had been granted to a limited num- ber of cab proprietors. The application of a cab proprietor to be admitted on equal terms was refused in each case, on the ground that it was not shown that the arrangement made by the companies was not beneficial to the public, and it was said that " the statute in question was passed for the benefit of the public, and not for that of individuals."

The later English cases we have cited seem to show that, under the English statute, the public convenience or inconvenience is not exclusively the test, but is only one element to be taken into account in considering what is an undue and unreasonable pref- erence, and that a common carrier may be regarded as repre- senting all those persons who choose to employ him. While the English statute provides against undue and unreasonable prefer- ences and advantages, it does not, in terms, provide that all persons and companies shall have equal facilities and accommo- dations for the use of the depot and other buildings and grounds of a railroad corporation. The statute relating to expressmen, construed in *New England Express Co.* v. *Maine Central Rail- road, ubi supra*, is in this respect similar in terms to the Pub. Sts. c. 112, § 188.

It is, undoubtedly, a convenience to passengers on a railroad, that common carriers of passengers or of baggage and other mer- chandise should be in waiting on the arrival of trains at a station, although no order requiring the attendance of such carriers has been previously given. While the statute requiring a railroad corporation to give to all persons and companies reasonable and equal terms, facilities, and accommodations for the use of its de- pot and other buildings and grounds, must, from the nature of the subject, be so construed as to permit the corporation to make

such reasonable regulations as are necessary to enable it to perform, without inconvenience, its duties as a common carrier, and such as the size and condition of its depot and other buildings and grounds require, yet the facts stated in the report cannot be held sufficient to warrant the plaintiff in admitting one company of expressmen to, and excluding all others from, the advantages of bringing express wagons within its grounds, and of accepting or of soliciting employment as a common carrier of baggage from the passengers arriving at its depot. The report does not show that any inconvenience to the railroad company, or to the public using the railroad, was occasioned by the defendant's entering the grounds of the company for the purpose of soliciting employment as a common carrier of baggage. Upon the facts as they appear in the report, it cannot be said that, within any reasonable construction of the statute, reasonable and equal facilities were granted to the defendant and to Porter and Sons, or that any necessity existed for giving a preference to the latter.

In *Hole* v. *Digby*, 27 W. R. 884, it was held that, if a railway company licensed one person to ply with carriages within its station yard, a person not so licensed commits a trespass in entering the yard, against the prohibition of the company, although the license given was an undue preference within the meaning of the St. 17 & 18 Vict. c. 31, § 2. See *Barker* v. *Midland Railway*, 18 C. B. 46. That statute, in § 3, authorized an application to the Court of Common Pleas, or to a judge of that court, by any person complaining of a violation of the act, and authorized the court, or judge, to issue a writ of injunction, restraining the company from continuing to violate the act, and in case of disobedience by the company authorized the court, or judge, to issue a writ of attachment, and to direct the payment of a sum of money, not exceeding £200, for every day during which, after a day to be named, the company failed to obey the injunction; and by § 6 it was provided that "no proceeding shall be taken for any violation or contravention of the above enactments, except in the manner herein provided," saving, however, all rights under existing laws. By the St. of 36 & 37 Vict. c. 48, § 6, the jurisdiction given to the Court of Common Pleas was transferred to railway commissioners. The ground of the

decision in *Hole* v. *Digby* is, that the sole remedy of a person aggrieved by the action of the railway company is by an application to the railway commissioners.

The remedies provided by our statutes (Pub. Sts. c. 112, § 191) are an action for damages, and also an action of tort for a penalty, which may be recovered by the party aggrieved to his own use. If, then, the railroad company, upon the facts appearing in the report, had no right absolutely to exclude the defendant, as a common carrier, from entering its depot and grounds to solicit employment from passengers, while it permitted Porter and Sons to enter for this purpose, and if it would be liable to the defendant in an action, for excluding him, the defendant could not be guilty of a tort in entering for this purpose in a reasonable manner and at reasonable times.