Crew, J.
We learn from -the record in this case that in August, 1872, the defendant in error was incorporated and organized as a Union Depot Company under the act of April 3, 1868 (65 O. L., 63), by the Cleveland, Columbus, Cincinnati & Indianapolis Railway Company and the Pittsburg, Cincinnati & St. Louis Railway Company. About 1873 said.Depot Company became the owner in fee of the tract of land in the city of Columbus abutting on High street, upon which its union station and railroad are constructed. Prior to 1892 said station and railroad and the approaches thereto were at grade with High street adjacent to said property. About 1892 and 1893 the city of Columbus erected a viaduct on High street adjacent to said property and over the railroad tracks crossing said street, *383 thereby raising the grade of High street on said viaduct adjacent to said station and its approaches, about twenty feet. Thereafter the Union Depot Company constructed its new union station, and the covered walk, driveway and concourse, forming the approach thereto in such manner that the same could be used in connection with and could he entered at grade from said viaduct, and it opened the same for use about August, 1897. The dimensions and arrangement of said driveway and concourse are such that they will not permit or accommodate thereon more than ten public or private hacks or carriages and two or three baggage wagons, at one and the same time. The Columbus Transfer Company is a corporation engaged in the hack and transfer business in the city of Columbus and in carrying passengers and baggage to and from said union station. On July 15,1899, the defendant in error, The Union Depot Company, made and entered into a written contract and agreement with the said The Columbus Transfer Company, which contract is as follows:
“This agreement made this fifteenth day of July, in the year eighteen hundred and ninety-nine, between the Union Depot Company, as first party, and the Columbus Transfer Company, of Columbus, Ohio, as second party. '
“ Witnesseth that the first party demises and leases to the second party the exclusive privilege of - soliciting upon its premises the carrying of passengers and baggage from thé union station, the property of said first party; in consideration of this, in addition to the stipulations hereinafter named the said second party agrees to provide a sufficient number of omnibuses, carriages, coupes and baggage wagons, to adequately provide for the accommodation of the *384 traveling public, at all trains arriving, and at all hours of the day and night; the same to be kept and maintained in good order and condition. Said second party also agrees to make no greater charge for its services in carrying passengers and baggage than ■ is or may be provided for in the ordinances of the city of Columbus relating, thereto. The vehicles of •said second party are to occupy such space on the concourse as may be designated by the station officers, and its employes at all times and in all respects shall be subject to the regulation and control of said officers.
“To hold the same unto the second party as tenant at will of the first party, and for the rent or sum of six hundred dollars ($600.00) per annum to commence on the fifteenth day of July, A. D. 1899, and to be paid in monthly installments on the tenth day of the following month of each year during said tenancy.
“That said first party hereby reserves ,the right to terminate this agreement and the said tenancy, and to take possession of and re-enter upon said premises at any time hereafter, after having given to the second party, or left, upon said premises, sixty (60) days.’ notice, in writing, of. its intention so to do, -and requiring said party to quit and deliver up possession of said premises.
• “That said second party hereby agrees to become and continue to be the tenant at will of the first party, under the conditions hereof, to pay -said rent, as above provided, and to keep said premises in good order and condition, and to quit and deliver up possession of said premises to said first party upon the expiration of the time mentioned in any notice to quit, given as aforesaid; and that upon the expira *385 tion of such time, the said tenancy shall cease, and said first party shall have the right forthwith to reenter upon and occupy, said premises, without .any further „or other notice, proceeding or process whatsoever.
“The said second party hereby.agrees not to use or occupy said premises for any other purpose than is above specifically described and not to assign., or transfer this agreement, nor underlet said premises without the written consent of the first party being first obtained.
“In testimony whereof, the parties hereto have caused this agreement to he executed in duplicate as of date the day and year first above written.
“Union Depot Co., Columbus, Ohio.
. ‘ ‘ By James McCeea, President.
“ (Seal.)
‘'Attest: C. C. Coenee, Secretary.
£ ‘ Sealed and delivered in the presence of us:
“George W. Bright.
“E. F. Wood.
“The Columbus Transfer Co. (Seal.)
“By S. S. Rickley, (Seal.)
“Vice President.”
Thereafter in order to make said contract effective and for the purpose of regulating and prescribing the conduct and management of said union depot and the business thereof, said Depot Company adopted certain rules and regulations, among which were the following:
“First: The space in the concourse adjoining the covered walk, for a distance of two hundred feet west of the station, is to he occupied by the Columbus Transfer Company for receiving, delivering and awaiting 'passengers.
*386 '‘ Second: ' Other, public hacks and other public vehicles will not be permitted to stand on the concourse between High street and the station building,, except to deliver passengers or to receive passengers who shall have previously employed them, and then for the shortest possible time, occupying such space for that purpose as may be designated by the station officers. ’ ’
The single question here for our determination is, were the contract and rules above set forth such as the Union Depot Company might lawfully make and adopt? On the trial of this case in the circuit court, that court answered this in the affirmative, and found and so adjudged that said Depot Company had the right to adopt and enforce such rules and to make and perform said contract. It is to procure a reversal of this finding and judgment of the- circuit court that this proceeding in error is prosecuted.
"While- it is contended and stated by relator in his brief that the making of said contract and^the adoption of said rules by the Union Depot Company was and is , a misuse and abuse of its corporate powers because “it is an unlawful discrimination against the traveling public,” no such complaint is made in his petition, the averment there being, “that said defendant has- misused its corporate powers and franchises by adopting through its board of managers a rule and regulation discriminating in the manner in which said concourse is to be used in favor of said The Columbus Transfer Company and against all others engaged in the hack and transfer business,” and on the trial of this case in the circuit court, so far as appears from the record, no question was made, or evidence offered for the purpose of showing, that reasonable and equal facilities were *387 not afforded by said Depot Company to all passengers arriving at or departing from said union station, or that the performance of said contract or the observance of said regulation was any detriment or disadvantage to the traveling public. So that the particular question presented by this record is not whether the contract and rule made by the Union Depot Company is on the part of said Company an invasion or violation of the rights of the traveling public, but rather whether such contract and regulation is an unauthorized and unlawful discrimination against those persons and corporations engaged in the hack and transfer business other than the Columbus Transfer Company. However the question of whether such contract and rule is in violation of any public duty owed by the Depot Company to such of the traveling public as become its patrons, being at least indirectly or incidentally involved in this controversy, it may perhaps properly be considered in determining the validity of the contract and regulation complained of by relator. It must, we think, be conceded that the Depot Company in the erection and construction of its station, and its driveway or concourse, owed no such duty to the traveling public, as imposed upon it the obligation to so construct such driveway or concourse as to provide thereon a public hack stand. The fact that it did so construct it as to conveniently accommodate a limited number of hacks or vehicles does not divest it of its right or control over its own property, and it may therefore, if it so desires, without violation of any duty, exclude therefrom all hacks and vehicles, and that it has, and may exercise this right is conceded by the relator. If, then, it may rightfully exclude all vehicles from its station grounds, what right of *388 the public can be said to be violated, or abridged, by the license or permission given to the Columbus Transfer Company to occupy the space in said concourse adjoining the covered walk for a distance of two hundred feet west of the station, when said company obligates itself “to provide a sufficient number of omnibuses, carriages, coupes and baggage wagons, to adequately provide for the accommodation of the traveling public at all trains arriving and at all hours of the day and night; the same to be kept and maintained in good order and condition, and agrees to make no greater charge for its services in carrying passengers and baggage than is or may be provided for in the ordinance of the city of Columbus relating thereto,” and where the license so given is, both by the rules of said Depot Company and the judgment of the circuit court in this case, limited and held to be subject to the right of other public hacks and vehicles to use and occupy such portion of said driveway for the purpose of delivering passengers, or of calling for persons who shall have previously engaged them. If the Depot Company is charged with no duty to furnish to incoming or outgoing passengers the means of transportation to and from its station, and is under no legal obligation to permit hacks or vehicles to enter its station grounds, clearly it violates no public duty when in-order that it may promote its own business and for the accommodation and convenience of its patron passengers, it grants to a transfer company the privilege or license to occupy, with its hacks, a certain portion of its concourse or driveway, even though such grant or license be exclusive in its character. That which said Depot Company may do or permit outside of its corporate obligation cannot be *389 said to be an abuse of its corporate power, or inconsistent with its corporate duty. It is however insisted by relator in this case that even though the Depot Company may have the right to prohibit all hack-men from standing their hacks on said driveway or concourse, yet, it must either exclude all, or admit all, and that it may not elect to admit some'and exclude others, and it is contended that the grant made to the Columbus Transfer Company is an abuse of corporate power on the part of the Depot Company in that, it is an unlawful discrimination in favor of said Transfer Company, and against all others engaged in a like business. While the question thus raised has not heretofore been before this court for consideration, yet this precise question has been so thoroughly and exhaustively reviewed and discussed, and has been so many times considered and determined by the courts, both federal and state, in other jurisdictions, that we feel it would be unprofitable, even were we able to do so, to attempt, by way of reason or argument, to add to what has already been said in these adjudicated cases. Counsel in this case have shown a commendable diligence in the collection and citation of authorities in support of their respective claims, and have materially aided us in the consideration of this case by their carefully prepared and comprehensive briefs. The authorities, it would seem, are in sharp conflict upon this particular question, and a review of all the authorities cited by counsel would not be possible within the proper limits of this opinion, hence only those apparently most relied upon will be noticed. The cases cited and relied upon by relator as supporting his contention of “unlawful discrimination,” are from the following jurisdictions: Missouri, *390 Montana, Michigan, Kentucky, Indiana and New Hampshire.
Of these the decisions in the first three states would seem to have been rested upon some constitutional or statutory provision of the particular state. In Cravens et al. v. Rodgers, 101 Mo., 247, the second clause of the syllabus is as follows: “The agreement to give the exclusive privilege is against public policy and the spirit of the state constitution (art. 12, sec. 23) which prohibits ‘discrimination in charges or facilities in transportation * * * between companies and individuals or in favor of either.’ ” In Montana Union Ry. Co. v. Langlois, 9 Mont., 419, the decision of the court seems to have been predicated in part at least, upon a similar constitutional provision of that state, against discrimination (art. 15, sec. 7, Const. of Montana).
The case of the Kalamazoo Hach & Bus Co. v. Sootsma, 84 Mich., 194, involved the construction or interpretation of a statute of that state (How. Stat., sec. 3355), requiring all railroad corporations to grant equal facilities for the transportation of passengers and freight to all persons, companies or corporations, and the decision in that case was rested upon the interpretation of this statute, although the judge in: delivering the opinion states therein, that independent of the statute and upon principle, the decision would have been the same. In this latter case the railroad company granted to the Kalamazoo Hack & Bus Company the exclusive use of a certain portion of its depot grounds most favorably located .for receiving and delivering passengers, and excluded therefrom all other hackmen, not even permitting them to occupy said space for the purpose of delivering passengers or of receiving passengers *391 who had previously employed them, and this fact alone is sufficient to distinguish it from-the present case. In McConnell v. Pedigo, 92 Ky., 465; Indianapolis Union Railway Co. v. Dohn, 153 Ind., 10, and Hedding v. Gallagher, 69 N. H., 650, the decision of the court is not based upon any constitutional or statutory provision, but in these cases grants such as the one here under consideration were held to be illegal either on the ground of public policy or as tending to create a monopoly. These cases therefore are directly in point and it must be admitted fairly support the contention of plaintiff in error, yet these decisions are so far opposed to what we conceive to be the clear weight of authority, that we are not disposed to adopt or follow them. Opposed to the doctrine of the foregoing cases, and supporting the contention of counsel for the Union Depot Company that a grant or license such as the one now under consideration is not unreasonable or unlawful, will be found, among others, the following cases: New York, etc., Railroad Co. v. Scovill, 71 Conn., 136; Kates v. Atlanta Baggage & Cab Co., 107 Ga., 636; Boston & Albany Railroad Co. v. Brown, 177 Mass., 65; Old Colony Railway Co. v. Tripp, 147 Mass., 35; Godbout v. St. Paul Union Depot Co., 79 Minn., 188; Norfolk & Western Ry. Co. v. Old Dominion Baggage Co., 99 Va., 111; New York, etc., Railway Co. v. Bork, 23 R. I., 218; The N. Y. Central, etc., Railroad Co. v. Flynn et al., 74 Hun, 124; Brown v. The N. Y. Central, etc., Railroad Co., 75 Hun, 355; Barney v. The D. R. Martin, 11 Blatchf., 233.
In Old Colony Railroad Co. v. Tripp, supra, Allen, J., says in the opinion: “We have not been referred to any decision or dictum, in England or in •this country, that a common carrier of passengers *392 and their baggage to and from a railroad station has any. right, without the consent of the railroad company, to usé the grounds, buildings and platforms of the station for the purpose of soliciting the patronage of.passengers, or that a regulation of the company which allows such use by particular persons, and denies it to others, violates any right of the latter. Cases at common law or under statutes to determine whether railroad companies in particular instances gave equal terms and facilities to different parties to whom they furnished transportation, and with whom they dealt as common carriers, have no bearing on the ease at bar. The defendant in his business of solicitor of the patronage of passengers held no relations with the plaintiff as a common carrier, and had no right to use its station grounds and buildings.”
A comparatively recent case, and one involving the identical question involved in the present case, is that of Donovan v. Pennsylvania Co., 120 Fed. Rep., 215, decided by the circuit court of appeals of the seventh circuit in 1903, in which it would seem the court had before it most, or all, of the adjudicated cases bearing upon this question. The syllabus of that case is as follows :
“A ráilroad company is under no duty, as a common carrier, to permit hackmen to enter its stations for the purpose of soliciting business from its passengers, and therefore its granting of such right to one person or concern does not entitle others to equal privileges on the same terms.”
The following is from the opinion in that case by Baker, Circuit Judge: “Appellee has a contract with the Parmelee Transfer Company under which two agents of the transfer company are stationed *393 within the depot building to solicit the custom of passengers. Those appellants who are hackmen have continuously asserted the right, over appellee’s repeated objections, to have two of their number enter the building to solicit custom, and have acted accordingly, and threaten to continue. These appellants who are not hackmen claim no right to enter appellee’s building for the purpose of plying their trades. The question on this branch of the cáse is the right of the hackmen to solicit business within the station, over appellee’s protest. That appellee may exclude all hackmen is not denied. But it is insisted that appellee may not lawfully give an exclusive privilege to one hackman; that, by granting the privilege to one, it has waived its right of exclusion; and that its only remaining right is to promulgate and enforce reasonable rules and regulations under which all hackmen, without discrimination, shall be afforded equal facilities in soliciting patronage within the station. (Citing many authorities pro and con.)
“The asserted right of the hackmen necessarily postulates a correlative duty on the part of the railroad company. The company owes the duty to all persons, without discrimination, to carry them on equal terms of service and compensation. As a common carrier of passengers, the company must provide facilities for the reception, carriage and discharge of its passengers, and must establish rates which are available equally to all who desire to become passengers. But the company does not owe to its passengers the duty to provide on its trains the opportunities for them to purchase newspapers, books, fruit, and the like, or to employ the services of a stenographer or of a barber, or to buy cab or *394 ■express tickets. Much less does it owe the duty to any one to permit him to pursue his vocation on the trains. And if not on the trains, then not in the station buildings.. The relation of carrier and passenger continues not merely on the train, but within the station at the end of the journey. The right of way on which the trains run, and the lands on which the depots are built, were obtained and are held for purposes of the same general character.
“The fact that the person who asserts the right to ■carry on his business for his own profit upon the trains or within the station buildings is himself a common carrier does not affect the question.”
In the case at bar it cannot be said that the Union Depot Company has granted to the Columbus 'Transfer Company the exclusive privilege of using or occupying its driveway or concourse, or the exclusive right to carry passengers and baggage to and from its station, but the license or privilege so granted is, as we have seen, subject to the right of all other persons or companies to use said driveway or concourse for the purpose of delivering passengers, or of receiving passengers who have previously employed them. The only exclusive privilege given the Transfer Company is the privilege of soliciting on the premises of said Depot Company the carrying of passengers and baggage. The Union Depot Company has, and may rightfully exercise, over its station' and depot grounds all the rights of an owner in possession except such as are inconsistent with the public use for which it holds its franchise. This court has said in Pittsburg, Ft. Wayne & Chicago Railway Co. v. Bingham, Admx., 29 Ohio St., 370-371: “For all purposes not connected with the operation of its road, the right of *395 the company to the exclusive use and enjoyment of the corporate property is as perfect and absolute as is that of an ownef of real property not burdened with public or private easements or servitudes. * * It is doubtless true that a railroad company, by erecting station houses and opening them to the public impliedly license all persons to enter. But it Is equally true that such license is revocable at the pleasure of the company as to all persons who are mot there on business connected with the road, or with its servants or agents.” Upon the undisputed facts «of the case now before us, we are of opinion that the •contract made, and the rule or regulation adopted hy the Union Depot Company, were and are reasonable in character and such as the Depot Company had the lawful right to make and adopt. Until such time, then, as it can be shown that the Depot Company is exercising its powers in bad faith, or to the disadvantage, hurt, or oppression of the public, the state may not, we think, rightfully question its action.

Judgment affirmed.

Spear, C. J., Davis, Shauck and Price, JJ., «concur.
Summers, J., not sitting.