Submitted on briefs April 3, affirmed April 17, rehearing denied May 29, 1917.

## BAGGAGE & OMNIBUS TRANSFER CO. *v.* CITY OF PORTLAND.*

(164 Pac. 570.)

**Carriers—Baggage—Granting Exclusive Right to Transfer Company.**

1. A railway company may legally contract with a transfer company giving it exclusive right to solicit from passengers the privilege of transferring baggage, such contracts being for the benefit of both carrier and passengers.

> [As to right a railroad company has to grant exclusive privileges to hackmen and other solicitors, see note in 22 **Am. St. Rep.** 699.]

*As to right to discriminate between hackmen and other solicitors of patronage at depots, etc., see note in 16 **L. R. A. (N. S.)** 777.

As to discrimination with reference to hackmen at depots, see note in 13 **L. R. A.** 848.

On right of carrier to grant exclusive train privileges to baggage or transfer companies, see note in 32 **L. R. A. (N. S.)** 1181.

As to right to exclude hackmen from railroad depot, see note in 39 **L. R. A. (N. S.)** 126.

On effect of discrimination by municipality in designating standing places for cabs or other similar vehicles, see note in **L. R. A.** 1915E, 726.                REPORTER.

Carriers—Baggage—Granting Exclusive Right to Transfer Company
—Constitution.

2.   Article I, Section 20, of the Constitution, prohibiting passing
of laws granting exclusive privileges, does not prohibit or regulate
the carrier's power to grant exclusive rights to a transfer company,
since it only applies to the enactment of laws.

Carriers—Baggage—Granting Exclusive Right to Transfer Company
—Statute.

3.   Section 6927, L. O. L., prohibiting railroads from giving "un-
due or unreasonable preference" to any person, does not prohibit
railroads from granting exclusive privileges to transfer companies;
the legislative intent being merely to prohibit the showing of prefer-
ence to passengers or shippers.

Carriers—Responsibility for Baggage.

4.   Railway companies are responsible, as common carriers, for
loss of or damage to baggage during transportation, and for a rea-
sonable time while baggage is in depots for delivery.

Carriers—Baggage—Regulating Use of Station.

5.   Since railway companies are responsible for baggage, they may
reasonably regulate use of stations, and other matters concerning
the dispatch of business for that purpose.

Carriers—Granting Exclusive Right to Transfer Company—Ordinance
Prohibiting—Validity—"Public Utility."

6.   City of Portland Ordinance No. 29,773, Section 3, prohibiting
railway companies from granting exclusive privileges to transfer
companies, is invalid, not being warranted or expressly authorized
by City of Portland Charter, Article IV, Section 73 (Sp. Laws 1903,
p. 26, as amended), empowering council to exercise police powers
"to the same extent as the State of Oregon," and Sections 153 and
154, giving the council "general supervision and power of regula-
tion of all public utilities within the City of Portland and of all
persons and corporations engaged in the operation thereof"; the
term "public utility" being "deemed to include every plant, prop-
erty, or system engaged in the public service within the city or
operated as a public utility as such terms are commonly understood."

Carriers—Granting Exclusive Rights to Transfer Company—Subject
to Exercise of Police Power.

7.   The advantage gained by granting exclusive privileges to a
transfer company to solicit passenger's baggage is subordinate to a
reasonable exercise of police power under which ordinances may be
passed in the interest of the traveling public.

Constitutional Law—State Constitution—Limitation of Power.

8.   A state Constitution is a limitation and not a grant of power.

Municipal Corporations—Charter—Grant of Power.

9.   A municipal charter is a grant and not a limitation of power,
hence authority to enact an ordinance must be found in the charter
expressly or by necessary implication.

From Multnomah: WILLIAM N. GATENS, Judge.

In Banc.   Statement by MR. JUSTICE MOORE.

This is a suit by the Baggage and Omnibus Transfer Company, a corporation, against the City of Portland, a municipal corporation, and its directing executive officers, to enjoin the threatened enforcement of a city ordinance.   The complaint alleges in effect that the Northern Pacific Terminal Company, a corporation, owns in that city a union depot and railroad tracks connecting with similar lines of other railway companies; that on January 1, 1914, the terminal company entered into a written contract with the plaintiff granting to the latter the exclusive privilege of requesting from passengers on incoming trains the right to transfer their baggage to such places in Portland, Oregon, as might be directed, and also to maintain within the station grounds a representative to solicit from travelers as they left sleeping-cars after occupying them all or a part of the night the same right; that the plaintiff was also granted the advantage of occupying at the depot a part of the baggage-room and was furnished by the terminal company with telephone connections; that the council of the City of Portland adopted, and its mayor approved, ordinance No. 29,773, Section 3 of which undertakes to make it unlawful for any railway company to give to the owner of any vehicle a right or privilege which would not be extended upon equal terms to the proprietor of all carriages in that municipality, and provides a penalty for a violation of the enactment; and that the defendants threaten to enforce the provisions of such ordinance and to subject the plaintiff and its agents to a multiplicity of suits and criminal actions, thereby depriving it of a valuable property right, to its irreparable injury and damage, to redress which wrong

no adequate remedy exists at law. Copies of the contract and of the ordinance were made parts of the complaint, the prayer of which is that the enactment may be decreed oppressive and void, and the defendants enjoined from putting their menace into execution. The answer admits some of the averments of the complaint, denies others, and alleges generally that the contract referred to is void in that it violates public policy by denying to all others than the plaintiff equal rights and privileges; that it is impossible for any other person engaged in the transfer business to obtain possession of baggage at the depot until several hours after the arrival of a train, thereby making it necessary for all passengers who desire the immediate delivery of their trunks, etc., to patronize the plaintiff, whose contract creates a monopoly. A demurrer to the answer on the ground that it did not state facts sufficient to constitute a defense was sustained, and the relief prayed for in the complaint was granted, from which decree the defendants appeal.

Submitted on brief under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney.

For respondent there was a brief over the names of *Messrs. Stapleton & Conley* and *Mr. M. E. Crumpacker.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended that the contract in question is void for the reason stated, and this being so an error

was committed in granting the relief awarded.   As to the validity of such agreements the decisions of courts of last resort are not harmonious.   Most of such final determinations relate to the analogous question of the granting by a railway company to a hack driver of a privilege to occupy some favored part of depot grounds so that an advantage is secured in the solicitation of passengers and baggage.   In *Old Colony R. Co.* v. *Tripp,* 147 Mass. 35 (17 N. E. 89, 9 Am. St. Rep. 661), which is a leading case on the subject, it was held that a railroad company might contract with a firm to furnish the means to carry incoming passengers and their baggage from its station, and thereby grant the exclusive right to conduct such business, which agreement was not violative of a statute providing that such a corporation "shall give to all persons or companies reasonable and equal terms, facilities, and accommodations * * for the use of its depot and other buildings and grounds."   In that case three of the justices dissented, but cited in support of their argument only one American case, that of *New England Express Co.* v. *Maine Central R. R.,* 57 Me. 188 (2 Am. Rep. 31), wherein a different conclusion was reached.   In *St. Louis etc. Ry. Co.* v. *Southern Express Co.,* 117 U. S. 1 (29 L. Ed. 791, 6 Sup. Ct. Rep. 542), it was ruled that railroad companies were not required by usage or the principles of the common law to transport the goods of independent express companies over their lines in the manner in which such commerce was usually carried, nor were they, in the absence of a statute commanding it, required to furnish to all independent express companies equal facilities for doing an express business on their passenger trains.   It will thus be seen that by a decision of the highest court in the land the principles of the common

law and the rules of general usage have been eliminated from the duty of a common carrier which is not obliged to transport goods of or to furnish equal facilities to express companies unless so demanded by statute: 6 Cyc. 374; 4 R. C. L. 593.

Since the decision was rendered in *Old Colony R. Co.* v. *Tripp,* 147 Mass. 35 (17 N. E. 89, 9 Am. St. Rep. 661), a diversity of judicial utterance is to be found in the opinions of American courts as to the application of the rule so adopted by the majority of the court and the doctrine thus asserted by the minority. In *Oregon Short Line R. Co.* v. *Davidson,* 33 Utah, 370 (94 Pac. 10, 14 Ann. Cas. 490, 16 L. R. A. (N. S.) 777), many of the cases are cited which support and those which deny the principle that a railway company may grant an exclusive privilege to one and refuse it to another who goes upon a common carrier's premises for the sole purpose of soliciting custom or of obtaining business. In that case, in construing a section of the constitution of Utah, which provided that "all railroad and other transportation companies are declared to be common carriers, and subject to legislative control, and such corporations shall receive and transport each other's passengers and freight without discrimination or unnecessary delay," it was held that the clause of the organic law referred to required only that transportation companies should not show favoritism to their own passengers or shippers over the passengers and freight coming from other lines, and did not prohibit a carrier from protecting its passengers from annoyance and interference by others who might desire to solicit the business and patronage of such travelers, or prevent the carrier from providing means by which a passenger might make arrangements for the transportation of himself or his prop-

erty beyond the end of the carrier's railroad.   In de-
ciding that case it was  determined that the  doctrine
announced in *New England Express Co.* v. *Maine Cen-
tral R. R.,* 57 Me. 188 (2 Am. Rep. 31), which it will
be borne in mind was cited by the minority of the court
in *Old Colony R. Co.* v. *Tripp,* 147 Mass. 35 (17 N. E.
89, 9 Am. St. Rep. 661), as sustaining their  theory,
had been exploded by the supreme court of the United
States in the *Express Cases,* 117 U. S. 1 (29 L. Ed.
791, 6 Sup. Ct. Rep. 542), where the true distinction
was pointed out with regard to persons who wished
to be carried as passengers or shippers of freight, and
such as desired to be transported for the purpose of
carrying on an independent business with the public
upon the property or trains of a common carrier.   To
the same effect see the case of *Union Depot & Ry. Co.*
v. *Meeking,* 42 Colo. 95 (94 Pac. 16, 126 Am. St. Rep.
145).   In addition to the cases cited in *Oregon Short
Line R. Co.* v. *Davidson,* 35 Utah, 10 (14 Ann. Cas.
490, 16 L. R. A. (N. S.) 777), in support of the con-
clusion there reached see also: *New York etc. R. Co.*
v. *Scovill,* 71 Conn. 136 (41 Atl. 246, 71 Am. St. Rep.
159, 42 L. R. A. 157) ; *Godbout* v. *St. Paul Union Depot
Co.,* 79 Minn. 188  (81 N. W.  835, 47  L. R. A. 532) ;
*State ex rel.* v. *Union Depot Co.,* 71 Ohio St. 379 (73
N. E. 633, 2 Ann. Cas. 186, 68 L. R. A. 792) ; *Lewis* v.
*Weatherford etc. R. Co.,* 36 Tex. Civ. App. 48 (81
S. W. 111).   In reaching a like determination in *Dono-
van* v. *Pennsylvania Co.,* 199 U. S. 279, 299 (50 L. Ed.
192, 26 Sup. Ct. Rep. 91), Mr. Justice HARLAM, says:

"There are cases to the contrary, but in our opinion
the better view, the one sustained by the clear weight
of authority and by sound reason and public policy,
is that which we have expressed."

2. The decision in *Hedding* v. *Gallagher*, 69 N. H. 650 (45 Atl. 96, 76 Am. St. Rep. 204), cited and relied upon by defendants' counsel as sustaining a contrary conclusion was expressly overruled upon rehearing (72 N. H. 377, 57 Atl. 225, 64 L. R. A. 811). We are satisfied that the contract made by the Northern Pacific Terminal Company with the plaintiff is valid unless the agreement has been rendered nugatory by proper enactment. The organic law of the state, which defendants' counsel assert establishes such fact, contains a provision as follows:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens": Article I, § 20 of the Constitution.

As this clause inhibits only the enactment of a law, it does not prohibit or regulate the right to contract in respect to any subject.

3–5. It is also maintained by defendants' counsel that the following provision of the statute is controlling:

"If any railroad shall make or give any undue or unreasonable preference or advantage to any particular person, firm, or corporation, or shall subject any particular person, firm, or corporation, or particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, such railroad shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared unlawful; *provided,* this section shall not prohibit any railroad from giving necessary preference to live stock and perishable freight over other freight": Section 6927, L. O. L.

This clause is Section 49 of the act of February 18, 1907, creating a railroad commission: Laws Or. 1907, p. 67, Chap. 53. A careful reading of the entire stat-

ute will disclose the legislative intent was to prohibit a railroad company from showing preference to any of its passengers or shippers. If the act inhibited railway companies from making contracts with hackmen for the transportation of such baggage as they could secure by interviewing passengers on incoming trains, where equal privileges are offered to all that seek to engage such services, the statute would necessarily apply to any other servant whom a common carrier might desire to employ. Passenger trains are usually operated so as safely to afford rapid transportation, and as they carry baggage it is essential that the trunks, valises, etc., should be segregated from the pile in the car used for that purpose before it arrives at the station where such personal effects are to be put off, so that no unreasonable delay may result. Railway companies are held responsible as common carriers for the loss of or damage to baggage while being transported and this liability continues for a reasonable time after such trunks, etc., have been placed in their depots for delivery. In order to protect railway companies it is essential that their employees and the persons with whom they make indemnity contracts for that purpose should alone be permitted to enter their baggage cars and rooms kept for storing such personal effects. It is to the advantage of railroad companies and also to the benefit of the traveling public that baggage when thus stored should be delivered as soon as possible, so that liability therefor might cease, the room kept as empty as practicable, and that the owner might speedily secure possession of his personal effects. Such companies ought, therefore, to be allowed freely to contract with any responsible person, firm, or corporation for the performance of that service, and there is noth-

ing in the statute prohibiting it.   For that purpose it is competent for railways to make reasonable by-laws regulating the use of its stations and other matters concerning the dispatch of its business.   (2 Redfield, Railways, § 200.)

6. The validity of Section 3 of ordinance No. 29,773, of which mention has been made, must, therefore, depend upon the power which the council of the City of Portland can legally exercise.   Subdivision 1 of Section 73 of Article IV of the charter of that municipaiity, enacted January 23, 1903, and now remaining in force, reads:

"The council has power and authority, subject to the provisions, limitations, and restrictions in this charter contained, to exercise within the limits of the city of Portland all the powers, commonly known ·as the police power, to the same extent as the state of Oregon has or could exercise said power within said limits": Special Laws Or. 1903, p. 26.

Clauses of the organic law of that municipality amended May 3, 1913, by an exercise of the initiative power, provide as follows:

"The term 'public utility' as used in this charter shall be deemed to include every plant, property, or system engaged in the public service within the city or operated as a public utility as such terms are commonly understood": Section 153, Chapter VII.

"The council shall have general supervision and power of regulation of all public utilities within the city of Portland, and of all persons and corporations engaged in the operation thereof": Id., Section 154.

It is maintained by defendants' counsel that founded upon the provisions last quoted Section 3 of ordinance No. 29,773 is a valid exercise of the police power, delegated to the council of the City of Portland, thereby making the municipal enactment referred to equiv-

alent to a statute regulating the business in which the plaintiff is engaged, and this being so an error was committed in sustaining the demurrer to the answer. The cases relied upon as sustaining the legal principle contended for will be reviewed. Thus in *Lindsay* v. *Mayor etc. of Anniston,* 104 Ala. 257 (16 South. 545, 53 Am. St. Rep. 44, 27 L. R. A. 436), it was held that though a hackman might under a contract with a railroad company owning a city depot have the right and privilege to enter the premises to solicit patronage, an ordinance subsequently enacted prohibiting hackmen from going within such depot to solicit patronage was not unconstitutional and void as impairing the obligation of a contract because the agreement should be deemed to have been entered into subject to the power of the city to regulate hacks. In *City of Chillicothe* v. *Brown,* 38 Mo. App. 609, it was ruled that an ordinance regulating the conduct of hackmen, porters, etc., in the pursuit of their business, and forbidding the solicitation of custom at the depot or platform of any railroad within the corporate limits of the city, was reasonable and valid, and that it constituted no defense to an action by the city for a violation of the ordinance that the superintendent of the railway at whose depot the offense was committed had drawn a line on the platforms thereof and told the defendant and others they might stand on the walk up to such mark and solicit travelers for their hotels, etc., as the railroad company had no authority to suspend at its depot the operation of the municipal enactment. In *City Cab etc. Co.* v. *Hayden,* 73 Wash. 24 (131 Pac. 472, Ann. Cas. 1914D, 731, L. R. A. 1915F, p. 726), it was determined that an ordinance prescribing rules for the regulation of hackmen at a depot-stand was not unreasonable in that certain vehicles were assigned to

specified positions, some of which were of much more value than others, if such spaces were reasonable so far as the rights of the public were concerned. In *City of Colorado Springs* v. *Smith,* 19 Colo. 554 (36 Pac. 540), an ordinance providing that hotel runners, hackmen, etc., plying their respective vocations at any railway passenger depot, on the arrival and departure of trains should occupy no part of the depot grounds or premises except that portion allotted to them by the station agent, and it was decided that such enactment should not be construed as giving a railroad company the right to exclude from the depot grounds any person lawfully engaged in serving the traveling public, either with or without vehicles, nor to confer upon such company the power to grant exclusive rights and privileges to persons engaged in such occupations, but that the ordinance being authorized by statute was to be upheld as a reasonable regulation to promote the convenience of the traveling public and to prevent disorder at railway stations.

7-9. A careful examination of these cases will disclose that the several ordinances referred to were enacted under express delegation of legislative authority to regulate at railway stations the business and conduct of hackmen; that though one of them may have entered into a contract with a railroad company for the exclusive privilege of soliciting patronage at its depot, the advantage thus obtained was held subject to the paramount right of a reasonable exercise of the police power, which authority to enact wholesome ordinances might be employed, not for the benefit of the railway company or its favorite hackman, but in the interest of the traveling public. The legal principle thus declared is acknowledged as controlling, but it has no application to the facts involved in the

case at bar, for here Section 3 of the ordinance in question does not attempt to regulate the conduct or business of hackmen, or to legislate in the interest or for the benefit of the traveling public, but the municipal enactment is designed to inhibit the making of valid contracts by railway companies so that the benefits derived from a grant of the exclusive privilege to solicit a transfer of baggage which the plaintiff enjoys under its agreement, may be divided among the owners of vehicles who are engaged in the same business and are able to secure a share of the patronage. Such Utopian state of society is occasionally brought into existence by the acknowledgment, voluntary or otherwise, of the interested parties, but legislation designed to effectuate such felicitous conditions savors of paternalism and would seem to be premillennial. Whether under a state Constitution, which is a limitation and not a grant of power, a statute can be validly enacted and legally enforced, whereby equality of burden and remuneration may be secured, is not now involved. In a municipal charter, however, which is a grant, and not a limitation of power, the authority to enact such a provision as Section 3 of ordinance No. 29,773 must be found in the charter in express language or arise by necessary implication. The organic law of the City of Portland, to which reference has been made, does not explicitly or inferentially contain such a grant of power, and for that reason the section of the enactment mentioned is void.

It follows that the decree should be affirmed, and it is so ordered.          AFFIRMED.   REHEARING DENIED.